| 102 | 643 |
| 103 | 288 |

# Wytheville.

BALTIMORE & OHIO RAILROAD COMPANY v. BURKE & HERBERT.

JUNE 16, 1904.

1. ASSUMPSIT—*Implied Promise—Privity.*—The action of assumpsit
lies in almost every case where one receives money which in equity
and good conscience belongs to another, or ought to be refunded.
While it lies upon an express promise such a promise is not neces-
sary. It may be maintained wherever anything is received or
done from the circumstances of which the law implies a promise
of compensation. The implied promise creates all the privity
necessary to support the action.

2. BANKS—*Depository—Collection of Checks—Improper Endorsement*—
If a depository receives from an agent of his principal checks
drawn payable to the principal, endorsed by the agent without
authority, and upon such endorsement, the depository, without
fraud, pays the amount thereof to the agent out of his own funds,
and thereafter collects the checks from the banks on which they
are drawn, no action lies by the principal against the depository
for the amount of the checks. In paying the amount of the checks
to the agent the depository paid his own money, and in collect-
ing the checks of the banks he collected as and for himself. If
the checks were not properly endorsed, then he did not receive
the principal's money. The mere fact of being depository with-
out receiving the money in that capacity would not create a lia-
bility. There is no promise, express or implied, on the part of the
depository to pay the principal, and without such promise no ac-
tion of assumpsit will lie.

Error to a judgment of the Circuit Court of the city of Alex-
andria, in an action of *assumpsit,* wherein the plaintiff in error
was the plaintiff, and the defendants in error were the defend-
ants.

*Affirmed.*

The opinion states the case.

*Hamilton & Colbert* and *James R. & H. Caton,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

The Baltimore and Ohio Railroad Company brought its action of trespass on the case in *assumpsit* against Burke & Herbert, in the Circuit Court of the city of Alexandria. The declaration contains eighteen counts, seventeen of which are founded upon checks drawn by customers of the B. & O. R. R. Co., payable to its order, upon various banks, and endorsed by D. P. Hurley, its agent. The averment in each of these counts is, that the defendants had been designated as the depository of the funds of the plaintiff in the city of Alexandria, and that as such depository they received the several sums of money represented by the checks to the use of the plaintiff, the amount so received on each check being set out in a separate count. The eighteenth count comprises the ordinary money counts in *assumpsit.* Along with the declaration a bill of particulars was filed. The defendants pleaded *non-assumpsit,* and upon the trial it was shown in evidence that Burke & Herbert had accepted the appointment as depository of the funds of the B. & O. R. R. Co. in the city of Alexandria; that D. P. Hurley was the agent of the railroad company; that as agent he received from its customers, in payment of freight and other charges checks payable to its order upon various banks, which he endorsed, and upon which Burke & Herbert paid him the money, received the checks, and thereafter collected the amount of said checks from the banks upon which they were drawn.

The claim of plaintiff is that Hurley had no authority as its agent to endorse its checks, and that Burke & Herbert, being its depository, the money collected by them upon the checks so endorsed should have been credited to the plaintiff upon the books of the defendants, as its duly designated and authorized depository.

Much evidence was taken, *pro* and *con.*, and a number of instructions were given, but in the view we take of the case it will be necessary to consider only one of them.

The court told the jury that "they must believe from the evidence that the defendants had, and received for the plaintiff, the money claimed in the bill of particulars, before they can find a verdict for the plaintiff, and although they may believe from the evidence that the checks in evidence were not properly endorsed, but were cashed by the defendants, and the defendants received the credit for them at the banks upon which they were drawn, yet the court instructs the jury that these facts created no privity between the plaintiff and the defendants, and there can be no recovery by the plaintiff against the defendants under the count for money had and received."

As the seventeen special counts are for money had and received, and the only averment in the eighteenth count upon which the plaintiff could recover is that for money had and received to its use, upon the evidence in this case there could be no recovery by the plaintiff except upon the terms stated in this instruction. This instruction, in other words, if it properly states the law, is conclusive of the case, and renders it unnecessary for us to consider it in any other aspect.

In considering this instruction it must be assumed that Hurley had no authority to endorse the checks set out in the declaration. It thus appears that as agent of the railroad company, in payment of charges due to it, he received from its customers the checks set out in the bill of particulars, drawn upon various banks, payable to the B. &

O. R. R. Co.; that he endorsed them without authority; that they were cashed for him by Burke & Herbert, and that the checks were subsequently collected by Burke & Herbert, and the money placed to their own credit; they being at the time the depository of the B. & O. R. R. Co. in the city of Alexandria. There was no express promise upon the part of Burke & Herbert to pay to the plaintiff the money in controversy. Did the facts, as stated, create an implied promise, for a promise, express or implied, must be shown by the plaintiff to entitle it to a recovery?

As between a promisor and promisee there is privity, and if the facts be such as to raise an implied promise upon the part of the defendant, if the defendant has money in his possession which in good conscience he ought to pay to the plaintiff, the law will imply a promise upon the part of the defendant to do his duty, and to pay the money; and this implied promise is as effectual to create privity between the parties as an express promise would be.

These propositions, we think, are fundamental, and we shall cite but little authority in support of them.

In *Attorney-General* v. *Perry,* 2 Comyn's Rep. 481, it was held that, "Whenever a man receives money belonging to another without any reason, authority, or consideration, an action lies against the receiver as for money received to the other's use; and this, as well where the money is received through mistake under color, and upon apprehension, though a mistaken apprehension of having a good authority to receive it, as where it is received by imposition, fraud, or deceit in the receiver."

Lord Mansfield, in *Moses* v. *Macferlan,* 2 Burr. 1005, said: "If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract." And in the course of the same opinion uses the following language: "In one word, the gist of this kind of

action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." See also *Cary* v. *Curtis,* 3 Howard, 236, 11 L. Ed. 576.

In *State v. St. Johnsbury,* 59 Vt., at p. 337, 10 Atl. 533, the court said: "In order to maintain this action there need be no privity between the parties, nor any promise to pay, other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff that he has no right conscientiously to retain. In such case the equitable principle on which the action is founded implies the promise. When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable ground for keeping it, the law creates the privity and the promise."

Barton's Law Practice, vol. 1, p. 125, says: "The action of *assumpsit* is a liberal and equitable one, and is applicable to almost every case where money has been received which in equity and good conscience ought to be refunded. An express promise is not necessary to sustain it, but it may be maintained wherever anything is received or done from the circumstances of which the law implies a promise of compensation."

We deduce from these authorities that wherever there is a promise there exists privity between the promisor and the promisee, whether that promise be express or implied.

We are not concerned with the right of the plaintiff against the banks upon which these checks were drawn, nor with that of the drawers of those checks upon those banks. The sole question for us to determine is the liability of Burke & Herbert to the plaintiff in this action, and not otherwise. When they paid over to Hurley the money for the checks which they received from him, they paid what was their own, and upon that transaction there was surely no money in their hands belonging to the plaintiff. When they presented the checks to the banks upon which they were drawn and received the money upon them, they

received it as and for their own money. If the checks were not properly endorsed, they did not receive the money of the B. & O. R. R. Co., for that money could only be taken from the banks upon a proper endorsement of the checks payable to and held by the B. & O. R. R. Co. But, as we have said, with the law applicable to the facts as between Burke & Herbert and the banks for the money received by them we have here no concern. The theory of the plaintiff is, that being the depository of the B. & O. R. R. Co. rendered them liable for the money thus received, and if they had received it as depository, or if they had received it in any character as money belonging to the B. & O. R. R. Co., or if the facts, whatever their intention at the time may have been, were such as to constitute the money thus received the property of the B. & O. R. R. Co., the law would have implied the promise upon their part to pay it, and they would be liable as for money had and received to the use of the plaintiff. But as we view the case there was no promise, express or implied, and therefore no privity which could support the action.

There was no error in the instruction given, and that instruction concluded the case. The judgment must be affirmed.

*Affirmed.*