# Richmond.

## CITY OF NORFOLK V. NORFOLK COUNTY.

### January 11, 1917.

### Absent, Prentis, J.*

1. DECLARATION—*Account—Demurrer.*—An account filed with a declaration is no part of the declaration, and defects in the account cannot be taken advantage of by demurrer.

2. ASSUMPSIT—*Demurrer.*—A demurrer will not lie to a common law count in assumpsit.

3. ASSUMPSIT—*Money Had and Received—In What Cases the Action Lies.*—There are three classes of cases in which the action of assumpsit properly lies for the recovery of money, viz.: 1. Where there is an express contract in fact and privity in fact between the parties plaintiff and defendant. 2. Where there is an implied contract in fact and privity in fact between the parties plaintiff and defendant. 3. Where there is an implied contract in law and no privity in fact, but an implied privity in law, between the plaintiff and defendant. The case at bar falls within the class last named, which is characterized as *quasi ex contractu,* the obligation upon which it rests being so designated under the civil law, from which the principle of such obligation was derived.

4. ASSUMPSIT—*Consideration.*—A valid and sufficient consideration, either of benefit moving from, or of detriment to (in change of status of), the plaintiff, is absolutely essential to support the action of assumpsit in all three classes of cases enumerated above.

5. ASSUMPSIT—*When the Action Lies.*—Assumpsit lies in all cases where one person has received money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it and *ex aequo et bono* it belongs to the plaintiff; in which cases there is, of necessity, the existence of a valid and sufficient consideration of detriment to the plaintiff, otherwise the equity of the latter would not arise—and in which cases, also, there is an absence of facts expressly proved which *ex aequo et bono* negative the existence of any promise. And this is so irrespective of whether the money was received from the plaintiff or a third person.

---

* Submitted before Judge Prentis took his seat.

6.  ASSUMPSIT—*Privity.*—Privity in fact is not essential in an action
    of assumpsit.

7.  ASSUMPSIT—*Implied Promise.*—The fiction of an implied promise
    will not be indulged in every case, but only where, in equity
    and good conscience, the duty to make such a promise exists.
    When the defendant has derived no right from the plaintiff,
    has not by mistake or fraud usurped or gotten the benefit of
    any original right of the plaintiff to the detriment or injury
    of the right of the latter, but relies upon a *bona fide* hostile
    claim or right, no such duty exists of the. defendant to the
    plaintiff and the law will not indulge the fiction of the exist-
    ence of an implied promise of defendant to plaintiff, for that
    would, in such case, be in itself inequitable.

8.  ASSUMPSIT—*When the Action Lies.*—Where the defendant has re-
    ceived money from a third person by law or authority through
    some mistake or fraud, which but for the mistake or· fraud
    would have vested the right to the money in the plaintiff, the
    plaintiff may recover.   That is to say, the plaintiff may recover
    whenever, but for the mistake or fraud, he would have had un-
    questioned right to the money.   Such cases rest upon the plain-
    tiff's original right to the fund, which right has been lost to
    the plaintiff or impaired by the mistake or fraud.   Where the
    defendant received the money by a right which is independent
    in its origin from. the original right of the plaintiff and in no
    way goes upon or displaces the latter, the recovery. is properly
    denied.   In such case the express facts negative any possibility
    of a promise of defendant to pay plaintiff anything, and equally
    negative any privity between their claims of right to the fund.
    Furthermore, no consideration exists to support the action.

9.  ASSUMPSIT—*Action by City Against County to Recover Taxes
    Paid Through Mistake to County.*—By an act of assembly cer-
    tain territory, formerly in the county of Norfolk, was annexed
    to the city of Norfolk.   In this territory was located certain
    property of a railroad and terminal company.   After the an-
    nexation this property was by mistake erroneously supposed
    to be situate and taxable in the county of Norfolk, whereas in
    fact it was situate and taxable in the city of Norfolk.   By
    reason of this mistake the property was erroneously assessed
    for taxes for certain years after such annexation in the county
    of·Norfolk, instead of in the city of Norfolk, as it should have
    been; and the taxes were paid by said companies to the county
    of Norfolk.

    *Held:* That since under the statute such error in assessment could
    not be corrected after thirty days from such assessment, the
    city might sue the county in assumpsit to recover the taxes ·
    paid the county under the mistaken assessment; payment by

the companies to the county being a valid payment under the statute law of the State and the receipt of the county of Norfolk being a complete acquittance of the railroad companies of all further liability.

Error to a judgment of the Circuit Court of Norfolk county in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Robert W. Tomlin, William G. Maupin* and *J. D. Hank, Jr.,* for the plaintiff in error.

*A. B. Carney* and *E. R. F. Wells,* for the defendant in error.

Sims, J., delivered the opinion of the court.

The court below sustained the demurrer of the defendant, the county of Norfolk, to the declaration of the plaintiff, the city of Norfolk.

The declaration contains two counts. The first is the common law count of *indebitatus assumpsit* for money had and received. The second is a special count.

There was an account filed with the declaration.

The facts alleged in the declaration, or admitted in argument, are substantially as follows:

That, by a certain act of Assembly of Virginia mentioned, certain territory, formerly in the county of Norfolk, was annexed to such city; that in this territory was located certain property of the Norfolk and Western Railway Company and of the Norfolk and Atlantic Terminal Company; that after such annexation such property of said companies was, by mistake, erroneously supposed to be situate and taxable in the county of Norfolk, whereas it was in fact then situate

and taxable in the city of Norfolk; that by reason of such mistake such property was erroneously assessed for taxes for certain years after such annexation in the county of Norfolk, instead of in the city of Norfolk, as it should have been; and that the taxes for the years so erroneously assessed were by reason of such mistake paid by said companies to the county of Norfolk. The action was instituted by the city of Norfolk against the county of Norfolk to recover the amount of the taxes thus erroneously paid.

The demurrer was to the declaration as a whole and to each count thereof.

Only two of the grounds of demurrer are relied on before, and need to be considered by, us—the second and third—as the first ground was removed by the amendment of the declaration allowed and made in the court below. These two grounds are as follows:

"Second. The declaration and the account filed therewith show that there is no privity between the plaintiff and the defendant and therefore set forth no cause of action against this defendant.

"Third. The second count of the declaration shows that there is no privity between the plaintiff and the defendant, and therefore sets forth no cause of action against the defendant."

The order complained of sustained the demurrer to the whole declaration.

The assignments of error are as follows:

"1st. The court should not have sustained the demurrer to the declaration as a whole nor to the first count thereof, because the first count of the declaration is the common count of *indebitatus assumpsit* for money had and received, and as such is not demurrable.

"2nd. The court should not have sustained the demurrer on the ground that there is no privity between plaintiff and defendant."

It is admitted in brief of counsel for appellee that it was through inadvertence that the order complained of sustained the demurrer to the first count, which was, as above stated, a common law count of *indebitatus assumpsit.*

The rule established in Virginia, that the account is no part of the declaration; that defects in the account cannot. be taken advantage of by demurrer (*Campbell* v. *Angus,* 91 Va. 438, 22 S. E. 167; *Booker* v. *Donohue,* 95 Va. 359, 28 S. E. 584; *King* v. *N. & W. Ry. Co.,* 99 Va. 625, 39 S. E. 701; *Grubb* v. *Burford,* 98 Va. 554, 37 S. E. 4) ; and the further rule in Virginia that a demurrer will not lie to a common law count in assumpsit (*Portsmouth Refining Co.* v. *Oliver Refining Co.,* 109 Va. 513, 64 S. E. 56, 132 Am. St. Rep. 924) are not controverted by the brief of counsel for appellee.

It is clear, therefore, that the order complained of was erroneous in sustaining the demurrer to the whole declaration and to the *first* count thereof.

But, as stated above, this was through inadvertence and does not go to the real controversy in the case, which involves the decision of the court below upon the third ground of demurrer. As the latter will again have to be passed upon in some form if the judgment were reversed upon the sole ground that it was erroneous on the second ground of demurrer, we feel that we should pass upon the real controversy involved in the demurrer, which is contained in the said third ground of demurrer, namely: The question—

1. Whether *privity* between the plaintiff and defendant is essential to a cause of action of the plaintiff in such a case as that before us?

Speaking generally, there are three classes of cases in which the action of assumpsit properly lies for the recovery of money, namely:

1. Where there is an express contract *in fact* and privity *in fact* between the parties plaintiff and defendant.

2. Where there is an implied contract *in fact* and privity *in fact* between the parties plaintiff and defendant.

3. Where there is an implied contract *in law* and no *privity in fact*, but an implied *privity in law*, between the plaintiff and defendant.

The case before us falls within the class last named, which is characterized as *quasi ex contractu*, the obligation upon which it rests being so designated under the civil law, from which the principle of such obligation was derived.

The history of the origin and growth of the action of assumpsit and the distinctions between the classes of cases mentioned are admirably stated in 2 Ruling Case Law, in its treatment of the subject "Assumpsit," from which we will make the following quotations:

"History.—In early times the want of a common law remedy suited to cases of nonperformance of simple promises caused frequent recourse to equity for relief, but in the twenty-five years of the reign of Henry VII. it was settled by the judges that an action on the case would lie as well for nonfeasance as for malfeasance, and in that way assumpsit was introduced. In theory it was an action for the nonperformance of simple contracts and the formula and proceedings were constructed and carried on accordingly. Very early, however, there were successful efforts to apply it beyond its import, and from the reign of Elizabeth this action has been extended to almost every case where an obligation arises from natural reason and the just construction of law, that is, *quasi ex contractu;* and is now maintained in many cases which its principles do not comprehend and where fictions and intendment are resorted to, to fit the actual cause of action to the theory of the remedy." 2 R. C. L., sec. 3.

With respect to the first and second classes of cases above mentioned this work says:

"Express and Implied Contracts.—The action of assumpsit lies for the enforcement of a contract express or im-

plied, but the contract must necessarily contain all the essentials of an enforceable contract; thus it must be based upon a valid and sufficient consideration, and there must be privity of contract established between the parties. As ordinarily understood, the only difference between an express contract and an implied contract is that in the former the parties arrive at their agreement by words, either oral or written, sealed or unsealed, while in the latter their agreement is arrived at by a consideration of their acts and conduct. In both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it. To constitute either the one or the other the parties must occupy towards each other the contract status and there must be that connection, mutuality of will and interaction of parties, generally expressed, though not very clearly, by the term 'privity.' Without this a contract by implication is quite impossible." *Idem*, sec. 6.

With respect to the third class of cases above mentioned this work says:

"Quasi-Contracts.—We have seen that assumpsit will lie for the breach of an express contract or one implied in fact; but after subtracting express contracts and those implied in fact, there is still left another large class of obligations, to enforce which the action of general assumpsit is a well-established remedy. The principle upon which this latter class of obligations rests is equitable in its nature, and was, like most other equitable principles, derived from the civil war. This obligation was under the civil law designated *quasi contractus*. Stated as a civil law principle, it was an obligation similar in character to that of a contract, but which arose not from an agreement of parties, but from some relation between them or from a voluntary act of one of them, or, stated in other language, an obligation springing from voluntary and lawful acts of

parties in the absence of any agreement. In quasi contracts the obligation arises not from consent, as in the case of contracts, but from the law or natural equity. The class of obligations now under consideration, and which are treated in works on contracts as contracts implied in law, or quasi contracts, is recognized and enforced by common law courts by means of a general assumpsit. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present. The intention of the parties in such case is entirely disregarded, while in cases of express and implied contracts in fact the intention is of the essence of the transaction. In the case of contracts the parties fix their terms and set the bounds upon their liability. As has been well said, in the case of contracts the agreement defines the duty, while in the latter class of cases the duty defines the contract," *Idem*, sec. 8.

It should not be overlooked that in the last class of cases, as well as in the two former, above referred to, a valid and sufficient *consideration*, either of benefit moving from, or of detriment to (in change of status of), the plaintiff, is absolutely essential to support the action of assumpsit.

It will be observed that it is common to the second and third class of cases above mentioned that "the contract in fact" is implied in law in the former; and "the contract in law" is implied in law in the latter. Therefore "contracts in fact" and "contracts in law" are both *implied in law* under certain circumstances, and are spoken of as "implied contracts" frequently in the cases, without discrimination, which sometimes leads to confusion of thought.

We come now to consider when the law will act and imply a contract and privity, in the third class of cases under

consideration, where neither in fact exists, so as to support an action of assumpsit.

In this connection it will be found that the law will make such implications in the third class of cases in all cases where one person has received money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it and *ex aequo et bono* it belongs to the plaintiff; in which cases there is, of necessity, the existence of a valid and sufficient consideration of detriment to the plaintiff, otherwise the equity of the latter would not arise—and in which cases, also, there is an absence of facts expressly proved which *ex aequo et bono* negative the existence of any promise in fact. And this is so irrespective of whether the money was received from the plaintiff or a third person. *Idem,* sec. 34, and numerous cases cited, among which is the case of *Lawson's Ex'or* v. *Lawson,* 16 Gratt. (57 Va.) 230, 80 Am. Dec. 702, cited in brief for appellant, hereinafter more particularly referred to.

An examination of the numerous authorities cited before us for appellant and appellee bear out the correctness of the above distinctions.

Among the authorities cited for appellant are the following:

In *Bayne* v. *United States,* 93 U. S. 642, 23 L. Ed. 997, it is said: "Assumpsit will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to pay."

As said by Mr. Justice Daniels in *Cary* v. *Curtis,* 3 How. 236, 11 L. Ed. 576: "The action of assumpsit for money had and received, it is said by Lord Mansfield (Burr. 1012, *Moses* v. *Macfarlen*), will lie in general whenever the defendant has received money which is the property of the

plaintiff and which the defendant is obliged by the ties of natural justice and equity to refund."

In the same case, Mr. Justice Story, in his able and elaborate opinion on this subject says: "It is an entire mistake of the true meaning of the rule of the common law, which is sometimes suggested in argument, that the action of assumpsit for money had and received is founded upon a voluntary, express or implied promise, of the defendant, or that it requires privity between the parties *ex contractu* to support it.    The rule of the common law has a much broader and deeper foundation.    Wherever the law pronounces that a party is under a legal liability or duty to pay over money belonging to another which he has no lawful right to exact or retain from him, there it forces the promise upon him *in invitum* to pay over the money to the party entitled to it.    It is a result of the potency of the law, and is in no shape dependent upon the will or consent or voluntary promise of the wrongful possessor. The promise is only the form in which the law announces its own judgment upon the matter of right and duty and remedy; and under such circumstances any argument founded upon the form of the action, that it must arise under or by virtue of some contract, is disregarded, upon the maxim *qui haeret in litera haeret in cortice.*    Hence it is a doctrine of the common law (as far as my researches extend) absolutely universal, that if a man, by fraud, or wrong, or illegality, obtains or exacts, or retains money justly belonging to another, with notice that the latter contests the right of the former to receive or exact or retain it, an action for money had and received lies to recover it back."

In *B. & O. R. Co.* v. *Burke and Herbert,* 102 Va. 643, 47 S. E. 824, Keith, P., delivering the opinion of this court said: "As between a promisor and promisee there is privity, and if the facts be such as to raise an implied promise on the part of the defendant, if the defendant has in his possession

money which in good conscience he ought to pay to the plaintiff, the law will imply a promise on the part of the defendant to do his duty and to pay the money; and this implied promise is as effectual to create privity between the parties as an express promise would be.

"These propositions, we think, are fundamental, and we shall cite but little authority in support of them."

In *Lawson's Ex'or* v. *Lawson*, 16 Gratt. (57 Va.) 230, 80 Am. Dec. 702, above referred to, Lee, J., says: "The action of *indebitatus assumpsit* for money had and received will lie whenever one has the money of another which he has no right to retain, but which *ex aequo et bono,* he should pay over to that other. This action has of late years been greatly extended, because founded on principles of justice; and it now embraces all cases in which the plaintiff has equity and conscience on his side, and the defendant is bound by ties of natural justice and equity to refund the money. In such a case, no express promise need be proved, because from such relation between the parties the law will imply a debt and give this action founded on the equity of the plaintiff's case, as it were upon a contract, *quasi ex contractu* as the Roman law expresses it, and upon this debt founds the requisite undertaking to pay."

The case of *Booker* v. *Donohoe, supra,* is very much in point in consideration of the question of whether privity in fact is an essential in an action of assumpsit. That was an action of assumpsit by the duly elected clerk of Elizabeth county against one who had unlawfully assumed the duties of the office and collected and converted to his own use fees and emoluments thereof. There was no privity in fact between the *de facto* officer, the defendant, and the *de jure* officer, the plaintiff; third parties paid the money. In that case the court held: "It seems to be a principle of natural justice as well as law, that where one person has injured another, or received compensation which in equity

and good conscience belongs to another, he may be required by action to account to such other for the injury done him. * * * The legal fees and emoluments of an office are a part thereof, and belong to the rightful incumbent; and, where a person receives such fees and emoluments on the pretense of title to the office, the *de jure* officer may recover the profits of the office from him by an action of assumpsit for money had and received to his use."

It was held by the Court of King's Bench as early as 1725, in the case of *Attorney General* v. *Perry*, 2 Com. 481, as follows: "Whenever a man receives money belonging to another without any reason, authority, or consideration, an action lies against the receiver as for money received to the other's use; and this as well where the money is received through mistake, under color and under an apprehension, though a mistaken apprehension, of having good authority to receive it, as where it is received by imposition, fraud, or deceit in the receiver."

In the case of *State* v. *Village of St. Johnsbury*, 59 Vt. 332, 10 Atl. 531, certain fines were paid by persons convicted in prosecutions under the liquor law to a justice of the peace of the Village of St. Johnsbury, and thus passed into the village treasury. The State of Vermont claimed that under the law it was entitled to these fines and sued the village for their recovery in an action of assumpsit. Here there was no privity in fact between plaintiff and defendant; third parties paid the money. The court held on this point, in a well considered opinion: "But it is said that assumpsit for money had and received will not lie, for that there is no privity between the State and the Village, as the latter received from third persons, and had retained the money in good faith, under an adverse claim of right and ownership. But in order to maintain this action, there need be no privity between the parties, nor any promise to pay other than what arises and is implied from the fact that the defendant had money in his hands belonging to the plaintiff that he

has no right conscientiously to retain. In such case the equitable principle upon which the action is founded implies the promise. When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable grounds for keeping it, the law creates the privity and the promise."

In the case of *Strough* v. *Board of Supervisors*, 119 N. Y. 212, 23 N. E. 553, a railroad company paid certain taxes to Jefferson county. Under the law these taxes should have been applied to the purchase of bonds of the town of Orleans issued to aid in the construction of the railroad, or to the purchase of other bonds to be held as a sinking fund for the redemption of said town bonds. The taxes in question were by mistake used for general county purposes. Strough, supervisor of the town of Orleans, instituted an action against the board of supervisors of the county of Jefferson to recover this money, in which a recovery was allowed. Here there was no privity in fact between the town and county; a third party paid the money. The court, in its opinion, said:

"The misappropriation of the taxes in question being conceded, there can, we think, be no doubt that an action would lie against the county in behalf of the town of Orleans to recover back the money misappropriated, on the principle upon which the equitable action for money had and received is founded. * * * It (the county) ought in justice to restore it and make good to the town what it has lost by its unauthorized act. To compel the performance of this duty, an action for money had and received is the appropriate remedy."

In *Bridges* v. *Supervisors of Sullivan Co.*, 92 N. Y. 570, property of a railroad company was assessed for taxes, 1874 to 1878 inclusive, in the county of Sullivan and the taxes were paid to such county. A statute directed these taxes to be paid to the town of Liberty. The county re-

fused to pay same over to the town. Bridges, supervisor
of the town, brought action against the county to recover
the money. Here was no privity between the town and
county; a third party paid the money. The court said:

"'The only question here is, to whom *ex aequo et bono* do
the specific moneys levied from the railroad corporations
for county taxes during the years named belong. We think
that they unquestionably belong to the town. The county
has simply failed to collect a sufficient sum to pay its county
charges during the several years during which it has un-
lawfully appropriated the moneys of the town to its own
use. It should now refund them to the town, to whom the
State gave them, and an action for money had and received
is the appropriate remedy to accomplish this result."

In *Colusa County* v. *Glenn County*, 117 Cal. 434, 49 Pac.
457, Glenn county was formed out of a part of Colusa
county. At the time of such formation there remained on
the assessment roll of Colusa county taxes against prop-
erty of a railroad company assessed while it was in Colusa
county. A portion of these taxes were afterwards paid to
Glenn county, whereas the whole of them should have been
paid to Colusa county. The latter instituted action against
Glenn county to recover such money. There was no priv-
ity here between the respective counties; a third party
paid the money. A recovery was allowed and the court
said:

"There can be no question, therefore, that the county of
Colusa had the right to collect from the railroad company
the taxes which were levied upon that portion of the road,
which before the creation of the new county was within its
limits; and Glenn county having received a portion there-
of, cannot legally retain it. * * * The county of
Glenn having received the money in question without any
right, and not being entitled thereto, is liable upon an ac-
tion for money had and received upon its implied promise

47

to pay the same to the county of Colusa which was entitled thereto."

In *City of Salem* v. *Marion County,* 25 Ore. 449, 36 Pac. 163, certain taxes were paid by the tax-payers to the sheriff of Marion county. Under the law the taxes should have been paid to the street commissioner of the city of Salem. The city instituted action against the county to recover the taxes, which was allowed. Here there was no privity between the city and the county; third parties paid the money. The court said:

"The principle that an obligation rests upon all persons, natural and artificial to do justice, so that, if a county obtain money or property of others without authority, the law, independent of any statute, will compel restitution or compensation, is not questioned. *Chapman* v. *County of Douglas,* 107 U. S., 348, 2 Sup. Ct. 62, 27 L. Ed. 378. But it is claimed that there is no privity, statutory or contractual, between the county and city which would sustain an action for money had and received, and hence the county would not be justified in paying over the money in question to the city. As the street commissioner is an officer of the city and as such authorized to collect said taxes, he is agent of the city for their collection; and whether collected in work or money, such work must be performed or money expended upon the streets, alleys, or bridges of the city for the benefit of its inhabitants."

In *Humboldt County* v. *Lander County,* 24 Nev. 461, 56 Pac. 228, certain trackage of a railroad company was claimed by both counties to be within their limits and both counties assessed the property for taxation. The railroad company paid the taxes to Lander county and did not pay Humboldt county. The trackage was in fact in Humboldt county, but Lander county retained and refused to pay over the taxes to Humboldt county, hence the action by the latter against the former to recover them. The recovery

was allowed. Here there was no privity between the counties; a third party paid the money. The court said:

"Where there is no privity, statutory or contractural, between a city and a county, where such county had collected money for taxes belonging to the city an action to recover the same would be sustained upon the principle that an obligation rests upon all persons, natural and artificial, to do justice, independent of any statute, so that if the county obtain money or property of others without authority of the law, it will be compelled to make restitution. * * * While it might be plain that those taxes were paid to Lander county under authority of law, yet the retention of the same, under the facts stipulated, was without authority of law, for it is shown that she had no right to tax the property in the first instance, and that the statute authorizing the payment to her by the Central Pacific Railroad Company conferred no such right; hence it can be truly said that the assessment, collection, and retention of the money were without authority of law, as her attempted exercise of the right of assessment and collection was without authority of law."

In the instant case the taxes were erroneously assessed by the State Corporation Commission in the county of Norfolk. But under the statute such error in assessment could not be corrected after thirty days from such assessment. They were not so corrected. Hence the assessment, although erroneous, was final, and the railroad and terminal companies, so far as they were concerned, were required by law to pay the taxes in question to the county of Norfolk, as they did. Such payment was a valid payment under the statute law of the State and the receipt of the county of Norfolk was a complete acquittance of the railroad companies of all further liability therefor. But the assessment in the county of Norfolk was in fact a mistaken one, the property being in fact within the limits of

the city of Norfolk at the time of the assessment. The county was never, as a matter of right, entitled to such taxes. They of right belonged to the city at the time they were assessed and at the time they were paid. The county, therefore, cannot in equity and good conscience retain such taxes as against the city. Moreover, the city has no other remedy than to sue the county, since the said companies have received a full acquittance and discharge of their obligation for payment of the taxes in question by the payment which they made to the county. That is to say, there exists in the instant case the element of detriment to the plaintiff as a consideration to support the action.

Counsel for the county of Norfolk cite in their brief and rely upon the following cases:

*Burton* v. *Burton,* 10 Leigh (37 Va.) 597, in which the Treasurer of the United States paid money to the widow of a decedent instead of to his executor—the latter being the party alone entitled to receive it. In such case this court held that an action of *assumpsit* would not lie by the executor against the widow. Upon this subject Brooke, J., said:

"I think it well settled that where two persons claim, each in his separate right, the same sum of money from a third party, and the third party pays it to one of the claimants, the other cannot recover it from him who receives it, in this or in any other form of action; for there is no privity between them. Whether he can recover it from the third party, who has rejected his claim and paid the money to his successful competitor, is another question, which does not belong to this case."

Tucker, P., on the same subject, said: "If the merits of this case were with the plaintiff, I should still be of opinion that the action could not be maintained. If the executor of the pensioner, and not his widow, was entitled to

his unpaid pension, then the payment to the widow by the government was a payment in its own wrong, and the executor may still justly demand payment to himself from the proper department. He cannot demand of the widow to pay over to him what she has received; for that was not his money. His money is in the hands of the government. What she received, she received as her own, claiming title to it as her own; and her claim being admitted and paid, she can never be compelled to refund. *Mayor, &c.* v. *Judah,* 5 Leigh (32 Va.) 305. And if the government cannot compel her to refund by direct action, it seems to follow that she cannot be, indirectly, compelled to refund, by being forced to pay over the amount to another claimant with pretensions adverse to her own. There is no privity between them, nor is there any ground on which to rest an implied contract. The reasoning of the court in *Rogers* v. *Kelly,* 2 Camp. 123, seems to me to be in point. The government and the widow cannot both be debtors of the executor. Now, if the payment was improperly made, the government is not discharged, and is still debtor to him. The widow, therefore, cannot be his debtor."

It will be observed that Judge Tucker directs attention to the fact that in that case the defendant was not paid and did not hold the money upon any right which could go upon or displace the original right of the plaintiff thereto. That is to say, the executor's claim against the government was not discharged or affected by the improper payment to the widow. The government was still debtor to the executor.

There are two aspects in which this case was correctly decided. First: The essential element of a *consideration*—in such a case a detriment to the plaintiff—from which alone the equity of the latter would arise, was absent. Second: In such a case the facts shown expressly to exist of two adverse claimants at the time the money was paid,

under *bona fide* claims to the money dependent upon irreconcilably hostile rights thereto, not made hostile by any mistake or fraud, but so in their origin, which negatived any promise *in fact* and negatived also the existence of any duty upon which a promise might otherwise have been implied in law. It was a case in which *ex aequo et bono* the facts expressly proved negatived the existence of any demand upon the law to imply a promise.

The fiction of an implied promise will not be indulged in every case, but only where, in equity and good conscience, the duty to make such a promise exists. When the defendant has derived no right from the plaintiff, has not by mistake or fraud usurped or gotten the benefit of any original right of the plaintiff to the detriment or injury of the right of the latter, but relies upon a *bona fide* hostile claim or right, no such duty exists of the defendant to the plaintiff and the law will not indulge the fiction of the existence of an implied promise of defendant to plaintiff, for that would, in such case, be in itself inequitable. See 4 Cyc. p. 325.

The latter distinguishing feature, in a line of cases similar to that of *Burton* v. *Burton,* in which the right to maintain the action of *assumpsit* is generally, although not universally, denied by the courts, is considered in the very able opinion of Chief Justice Hornblower, in the case of *Sergeant* v. *Stryker,* 16 N. J. L. 464, 32 Am. Dec. 404, cited in brief of counsel for appellee. On this subject he says:

"There must, therefore, be some principle running through the cases, by which it can be known when *indebitatus assumpsit* will lie for money had and received, and when it will not. The rule cannot be arbitrary and the creditor at liberty to look to his immediate debtor, or to some other person who has got his debtor's money in his hands, at his election. Lord Mansfield says, in *Moses* v. *McFerlan,* 2 Burr. 1009, 'that there are numberless in-

stances in which this action lies, for money the defendant
has received from a third person, upon a claim of title to
it, in opposition to the plaintiff's right;' but he adds, 'and
which the defendant had by law, authority to receive from
such third person.' .This is no doubt true, and I think all
the cases relied upon are such as go upon the plaintiff's
title to the specific fund; or where the third person having
lawfully paid over the money, the plaintiff has no remedy
against him; and this I think will be found to be the true
criterion in such cases."

In the conclusion of such opinion it is said: "Stryker
cannot maintain this suit against the defendants below;
they have got what does not belong to them; but that is no
wrong to him. His right to the reward at the hands of
the sheriff is as perfect as ever it was, and if he has re-
leased it, it is his own fault or misfortune. I see nothing
to prevent the sheriff from recovering the money he has
paid the defendants, if in fact they did not retake the pris-
oner."

But mere hostility of claim by the defendant at the time
the action is brought by the plaintiff, or even at the time
the money is received by the defendant, is not in itself de-
cisive of the question we have under consideration. The
very vital distinction involved in the case of *Burton* v.
*Burton, supra,* and in like cases in which the defendant
receives the money from a third person, or holds it upon a
claim of right in opposition to the plaintiff's right, where
the recovery by the plaintiff has been properly allowed or
denied by the courts, is more clearly indicated in the case
of *Sergeant* v. *Stryker, supra;* and that distinction is this:
Where the defendant has received money from a third per-
son by law or authority through some mistake or fraud,
which but for the mistake or fraud would have vested the
right to the money in the plaintiff, the plaintiff may re-
cover. That is to say, the plaintiff may recover whenever,

but for the mistake or fraud, he would have had unquestioned right to the money. Such cases rest upon the plaintiff's original right to the fund, which right has been lost to the plaintiff or impaired by the mistake or fraud. Where the defendant received the money by a right which is independent in its origin from the original right of the plaintiff and in no way goes upon or displaces the latter, the recovery is properly denied. In such case the express facts negative any possibility of a promise of defendant to pay plaintiff anything, and equally negative any privity between their claims of right to the fund. Furthermore, no consideration exists on the part of the plaintiff to support the action.

Counsel for appellee cite also the following cases which contain the distinguishing features under consideration, namely: *Butterworth v. Gould,* 41 N. Y. 450; *Hathaway* v. *Homer,* 54 N. Y. 655; *Moore* v. *Moore,* 127 Mass. 22; *Cole* v. *Bates,* 186 Mass. 584, 72 N. E. 333.

Counsel for appellee take the position that the feature of "valid acquittance" which they emphasize in connection with their discussion of the foregoing cases cited and relied on by them, is one of fundamental importance, and they claim that the instant case contains this feature, and hence should be ruled by the decision of this court in *Burton* v. *Burton, supra,* and like cases cited in their brief. For the reasons stated above, we think this position on the law of the case is well taken, but applying such legal test we come to a different conclusion of fact from that of counsel for appellee. It seems clear to us that in the instant case the payment of taxes made by the railroad and terminal companies to the county of Norfolk was in accordance with the statute law of the State, and the assessment made in accordance with such law; and, hence, such payment was "a discharge of the tax debts" of these railroad companies so far as the railroads were concerned.

It released them from all further obligation to any one. After such payment the railroads did not owe the city of Norfolk anything. The latter was not in the position of having two debtors, the railroad company and the county of Norfolk. The original right of the appellant to the taxes in question was displaced by the mistake in the assessment, and the failure of its correction within the thirty days allowed by law. This failure was due to mistake of both appellant and appellee existing at the time as to the true location of the property assessed. Thus the appellant's holding of the money supplants and rests upon the original right of the appellant which has been lost to the latter by the mistake aforesaid. Here the consideration exists from which the equity of the latter arises to support the action. That is to say, the instant case does not fall within the said line of cases cited and relied on by counsel for appellee.

It will be noted that in all of the cases cited above in this opinion in which it was held that the action of *assumpsit* would lie and as to which we give a brief statement of such cases, the initial payment was a discharge of the original debt, and the plaintiff had no remedy against any party with whom it was in privity in fact. We think the instant case falls within the latter line of authorities, among which is the decision of this court in the case of *Booker* v. *Donohoe, supra,* where the debts of those who paid fees to the *de facto* officers were discharged by such payment, and must be decided accordingly.

The two remaining cases cited, and relied on by counsel for appellee, of *Town of Rushville* v. *President of Town of Rushville,* 39 Ill. App. 503, and *City of Charleston* v. *Commissioners,* 52 Ill. App. 41, are upon their facts irreconcilable with the line of authorities we shall follow; but the decisions themselves seem to be placed by the opinions therein on the ground that the initial payment being due

48

to the error of the officer making the payment, the original obligation was not discharged, as well as upon the ground of lack of privity between plaintiff and defendant. The court seemed to regard them as cases of payment by the officers receiving the money and does not go behind the officers to the parties who paid the money and regard the latter as paying the money as most similar cases do.

Further, as pointed out by counsel for appellant, these two cases are not decisions of the court of final resort in Illinois.

A number of other authorities are cited by counsel for appellant, and criticisms of some of them are made by counsel for appellee, and a reply to such criticisms is made in a reply brief of counsel for appellant, in which counsel on both sides of the case have evidenced a very extensive examination of the very interesting and important question of law involved in the instant case, and the able presentation of the diverse views of opposing counsel has been of great assistance to this court. All of these authorities have been examined, but it is believed that a further discussion of them would unduly prolong this opinion without throwing any additional light on the point of law involved.

For the reasons given above, the judgment complained of must be set aside and the case remanded to the court below for further proceedings to be had therein, not in conflict with this opinion.

*Reversed.*