# Richmond

ARMOUR AND COMPANY V. WHITNEY AND KEMMERER, INC.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*H. J. Kiser* and *Morton & Parker,* for the plaintiff in error.

*R. S. Graham, Lewis R. McCormick* and *O. M. Vicars,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

Whitney and Kemmerer, Incorporated, obtained a verdict and judgment against Armour and Company in the Circuit Court of Wise county, in an action of assumpsit therein instituted for the sum of $1,889.73. To that judgment Armour and Company secured this writ of error.

The record presents the following case:

In the year 1927 the Norton Coal Company became indebted to Armour and Company for meats and other products furnished its commissary in the town of Norton, Virginia. The Norton Coal Company being pressed for money,

an agreement was entered into whereby Armour and Company furnished Norton Coal Company with orders for shipments of coal from its mines, with the understanding that sixty per centum of the cars shipped should be credited on the then standing account which Norton Coal Company owed Armour and Company, and the balance of forty per centum of said shipments paid for in cash, or its equivalent in credit for merchandise furnished by Armour and Company to Norton Coal Company. The agreement was complied with by both parties until about January 1, 1928, when Norton Coal Company notified Armour and Company that it could not ship any more coal on the sixty-forty basis. Thereupon a dispute arose as to how long the agreement was to continue; it being contended by the Norton Coal Company that the arrangement was only to last until December 31, 1927, and contended by Armour and Company that it was to continue in effect until the account due it by the Norton Coal Company had been fully liquidated. In this situation Mr. G. M. Blake and Mr. W. E. Wassum, local representatives of Armour and Company at Norton, Virginia, and Mr. J. K. Taggart and Mr. H. G. Dalton, general manager, and secretary, respectively, of the Norton Coal Company, got together on January 10, 1928, and entered into a tentative agreement to the effect that Armour and Company should furnish Norton Coal Company with orders for seven cars of coal per week, one car thereof to be credited against the old account of the Norton Coal Company, and the other six cars to be paid for by Armour and Company in cash on receipt of invoice. All these gentlemen thereupon repaired to the office of Norton Coal Company, at Norton, Virginia, and Mr. Taggart called Mr. Frank Sears, district credit manager of Armour and Company, at Lynchburg, Virginia, over the telephone and acquainted Mr. Sears with the proposition. After some conversation between Mr. Taggart and Mr. Sears, wherein the latter ratified the agreement above set forth, the same was reduced to writing in the form of a letter addressed to Mr. Sears, dictated by Mr. Taggart and signed by him as gen-

eral manager of Norton Coal Company. Omitting the formal address, this letter reads as follows:

"NORTON, VA., January 10, 1928.

"DEAR MR. SEARS:

"Pursuant to telephone conversation today between you and the writer, during which conversation and listening in were present Messrs. Blake and Wassum of Armour and Company and Mr. Dalton, we agree to ship you coal, you to furnish the consigning point so long as you are able, at the rate of one (1) car per day at a price of $1.60 per net ton.

"We are to invoice you this coal in blocks of seven (7) cars, one (1) car to be credited to the account of The Norton Coal Company—the other six (6) to be paid for by you on receipt of invoice and not to be credited against the now standing account of The Norton Coal Company. This, as stated above, to remain in effect so long as you are able to furnish consignment for the coal, or, we are able to continue shipment.

"I feel sure that now this will be thoroughly understood by all parties, and will be strictly adhered as a sane and sensible arrangement for business for us and liquidating your account.

"Thanking you very much for your consideration, we are,

"Yours very truly,

"NORTON COAL COMPANY,
"J. K. TAGGART,
"JKT/s                         "General Manager."

Pursuant to this arrangement Norton Coal Company proceeded to ship seven cars of coal per week to Armour and Company, in accordance with its orders, but before any of these shipments were billed or paid for, Armour and Company received the following letter:

"NORTON, VA., January 18, 1928.
"ARMOUR AND COMPANY,
  "NORTON, VA.

"GENTLEMEN:
  "Referring to our agreement of the 10th instant, in which we agreed to ship coal on your order, one car out of each seven to be credited to our old account, you to pay for six;
  "Beg to advise that we have entered into an agreement with Whitney and Kemmerer, Inc., by which they are to act as exclusive agents for the sale of our product, therefore, in carrying out the above agreement, the Norton Coal Company will render you invoice for one car out of each seven shipped and Whitney and Kemmerer will render invoice for the other six, you to remit direct to them at their Philadelphia office:
  "Therefore, for shipments made last week, Whitney and Kemmerer will render invoice to you for the following:
  "Jan. 12, N&W 12062, N&W 81976 and N&W 16751.
  "Jan. 13, N&W 18544, N&W 12583 and N&W 14476, and Norton Coal Company will invoice car N&W 6360, shipped on the 14th. We will advise you on postal notices sent you from now on the cars that will be invoiced by Whitney and Kemmerer and those that will be invoiced by us for application on account.
                    "Yours very truly,
                    "NORTON COAL COMPANY,
                              "H. G. DALTON,
                                        "Secretary."

  In accordance with this letter, Whitney and Kemmerer rendered invoice to Armour and Company for the six cars of coal therein referred to, and Norton Coal Company rendered invoice to Armour and Company for the car of coal shipped which was to be credited on its standing account. On February 15, 1928, Whitney and Kemmerer received at their Philadelphia office two checks of Armour and Company in payment of the invoice of January 23, 1928, for the

six cars of coal shipped by Norton Coal Company on January 12th, and 13th, and also a check in payment of an invoice rendered by them for six cars of coal shipped by Norton Coal Company on January 19th, 20th, and 21st. These checks were credited on the account of Armour and Company by Whitney and Kemmerer on the 15th of February, 1928.

Continuing to act under the agreement of January 10, 1928, Norton Coal Company shipped Armour and Company, in accordance with its orders, at the rate of seven carloads of coal per week, six carloads of which were invoiced to Armour and Company by Whitney and Kemmerer in accordance with the letter of January 18, 1928, and one carload invoiced direct by Norton Coal Company to be credited on its standing account. The latter part of February, 1928, Norton Coal Company notified Armour and Company that it could no longer continue the shipment of coal under the arrangement, for the reason that same was objected to by its creditors, and thereupon ceased the shipment of coal to Armour and Company entirely.

At the time Norton Coal Company stopped the shipment of coal, Armour and Company was indebted for coal invoiced to them by Whitney and Kemmerer, as aforesaid, in the sum of $2,380.96, and Norton Coal Company owed Armour and Company $1,668.33 balance on its standing account. Upon being requested by Whitney and Kemmerer to pay the amount due for coal invoiced by them, as above stated, Armour and Company deducted therefrom its account against the Norton Coal Company and, on April 4, 1928, mailed Whitney and Kemmerer a check for the difference, amounting to $692.83. Whitney and Kemmerer refused to accept this settlement and instituted this action, which resulted in the judgment complained of.

At the conclusion of the evidence Armour and Company moved the court to strike out all of the evidence offered by the plaintiff below on the ground that it did not constitute a good cause of action, and was at variance with the plaintiff's declaration, because the contract under which the coal

was shipped was with the Norton Coal Company, and Whitney and Kemmerer, therefore, has no right to sue for the amount in controversy. The refusal of this motion by the court is assigned as error.

The first count of the plaintiff's declaration, which is in general assumpsit, alleges that, "the said defendant was indebted to the said plaintiff in the sum of $2,380.96 for the price and value of coal before that time sold and delivered by the plaintiff to the defendant at its special instance and request. An itemized statement of the account for said coal so sold and delivered is attached hereto and made a part hereof." The declaration also contains a count for money paid by the plaintiff for the use of the defendant, and a count for money had and received by the defendant to the use of the plaintiff. The plaintiff filed a counter affidavit under the statute, and pleas of the general issue and the statute of limitations. Under the last named plea the jury deducted $591.23 from the claim of $2,380.96, thereby reducing the amount allowed by the verdict to the sum of $1,789.73, as above stated.

While it is true that the contract set forth in the letter of January 10th, was between Norton Coal Company and Armour and Company, the letter of January 18th, upon which plaintiff below partly relies as the basis of its action, advised Armour and Company that all payments for the six cars of coal per week were to be made to Whitney and Kemmerer, who would bill Armour and Company for the same, and it appears that Armour and Company acquiesced in these directions by making settlements for the coal with Whitney and Kemmerer instead of Norton Coal Company. It also appears from the evidence that by a written contract, dated June 1, 1927, between Norton Coal Company and Whitney and Kemmerer, Norton Coal Company agreed to turn over and deliver to Whitney and Kemmerer all the coal and coke produced from its mines and ovens, and to bill all coal and coke to the account of Whitney and Kemmerer, Incorporated; and Whitney and Kemmerer agreed to handle and sell the entire production of coal and coke

from the mines and ovens of Norton Coal Company and to pay Norton Coal Company for all coal and coke so shipped and billed on or before the 20th day of the month following the date of shipment. Said contract further provides that, in consideration of advancements made by Whitney and Kemmerer to Norton Coal Company on account of coal and coke to be shipped, the Norton Coal Company thereby assigned and transferred to Whitney and Kemmerer, Incorporated, all accounts receivable and money due or payable from day to day to the Norton Coal Company on account of coal and coke shipped, said accounts so collected to be applied by Whitney and Kemmerer to the payment of the money which had been, or should thereafter be advanced to Norton Coal Company by them.

It further appears that the coal shipped Armour and Company and remaining unpaid for was accounted for by Whitney and Kemmerer in accordance with the above contract, and that the above facts were brought to the knowledge of Armour and Company before the institution of this suit. In view of the foregoing circumstances, we think it clear that Whitney and Kemmerer was entitled to the money which Armour and Company originally agreed to pay Norton Coal Company for the coal, and it, therefore, had the right to maintain this action for the money, notwithstanding the fact that there was no privity in fact between Whitney and Kemmerer and Armour and Company under the original contract. It is well settled that privity in fact is not necessary to justify an action of assumpsit where there is an implied contract in law between the plaintiff and defendant.

In the case of *Norfolk* v. *Norfolk County*, 120 Va. 356, 91 S. E. 820, 821, it is said: "Speaking generally, there are three classes of cases in which the action of assumpsit properly lies for the recovery of money, namely:

"1. Where there is an express contract *in fact* and privity *in fact* between the parties plaintiff and defendant.

"2. Where there is an implied contract *in fact* and privity *in fact* between the parties plaintiff and defendant.

"3. Where there is an implied contract *in law* and no *privity in fact,* but an implied *privity in law,* between the plaintiff and defendant."

The same case quotes from 2 R. C. L., page 749, section 8, as follows: "Quasi-Contracts.—We have seen that assumpsit will lie for the breach of an express contract or one implied in fact; but after subtracting express contracts and those implied in fact, there is still left another large class of obligations, to enforce which the action of general assumpsit is a well-established remedy. The principle upon which this latter class of obligations rests is equitable in its nature, and was, like most other equitable principles, derived from the civil law. This obligation was under the civil law designated *quasi contractus.* Stated as a civil law principle, it was an obligation similar in character to that of a contract, but which arose not from an agreement of parties, but from some relation between them or from a voluntary act of one of them, or, stated in other language, an obligation springing from voluntary and lawful acts of parties in the absence of any agreement. In quasi contracts the obligation arises not from consent, as in the case of contracts, but from the law or natural equity. The class of obligations now under consideration, and which are treated in works on contracts as contracts implied in law, or quasi contracts, is recognized and enforced by common-law courts by means of a general assumpsit. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present." See also *Baltimore & Ohio R. Co.* v. *Burke,* 102 Va. 643, 646, 47 S. E. 824.

■ "The action of *assumpsit* is a liberal and equitable one, and is applicable to almost every case where money has been received which in equity and good conscience ought to be refunded. An express promise is not necessary to sustain it, but it may be maintained wherever anything is received or done from the circumstances of which the law im-

plies a promise of compensation." 1 Barton's Law Practice, page 125.

It appears from the record that after the court overruled the motion of the plaintiff in error to strike out the plaintiff's evidence at the conclusion of all of the evidence in the case, at the instance of the plaintiff, the court gave the following instruction: "The court instructs the jury that the defendant, Armour and Company, waived its right to set off the purchase price of the coal billed it by the plaintiff Whitney and Kemmerer, Incorporated, against the debt the Norton Coal Company, Incorporated, owed it, by the agreement of January 10, 1928, offered in evidence in this case, and that under the contract of June 1, 1927, between Whitney and Kemmerer, Incorporated, Norton Coal Company, Incorporated, as modified by the agreement of December 14, 1927, between the two last named corporations, offered in evidence, the purchase price of said coal was paid to Norton Coal Company, Incorporated, by the said Whitney and Kemmerer, Incorporated, and the sum owing therefor by Armour and Company became payable to the said Whitney and Kemmerer, Incorporated."

The defendant below excepted to the foregoing instruction and then offered a plea of set-off, seeking to set off the $1,688.83 owing it by Norton Coal Company against plaintiff's demand. This plea was objected to by the plaintiff below and the court refused to allow it to be filed.

It is insisted by the plaintiff in error that the court below erred in holding in the aforesaid instruction that Armour and Company had waived its right to set off the debt owing by Norton Coal Company against the purchase price of the coal billed it by Whitney and Kemmerer.

Under Code, section 5768, Armour and Company without doubt had a right to set off its claim against the Norton Coal Company as against the claim sued for by Whitney and Kemmerer, if Armour and Company had no notice of the assignment of the coal account by Norton Coal Company to Whitney and Kemmerer at the time the set-off was created; and that it did not have such notice cannot be dis-

puted. So far as Armour and Company's right of set-off is concerned, therefore, Whitney and Kemmerer merely stand in the shoes of the Norton Coal Company. *Phillips* v. *Portsmouth,* 115 Va. 180, 78 S. E. 651; *Porter* v. *Young,* 85 Va. 49, 6 S. E. 803. The question of whether Armour and Company would have had this right of set-off if the Norton Coal Company had brought this suit, depends, we think, upon the proper construction of the letter of January 10, 1928.

It seems manifest that it was the intention of the parties, as evidenced by this letter, that the agreement would be discontinued whenever Armour and Company found itself unable to furnish consignment for the coal, or the Norton Coal Company found it was unable to continue shipment. It also seems perfectly obvious that it was the intention of the parties that up to the time the contract should be discontinued for one of the causes above mentioned, Armour and Company was to apply the value of only one car a week to the liquidation of their account against the Norton Coal Company, and to pay for the other six cars of coal per week in cash. The express language is: "the other six to be paid for by you on receipt of invoice and *not to be credited against the now standing account of the Norton Coal Company."*

That one may waive by agreement the right of set-off seems now well settled. In 25 Am. Eng. Enc. of Law (2d Ed.) 497, this is said:

" * * * (1) There is some authority to the effect that the right of set-off may be insisted on though an express promise has been made to relinquish it. But it seems that under the general well-settled doctrine that a person may waive many statutory or constitutional provisions intended for his benefit, a party entitled to a right of set-off may waive it by an agreement deliberately made upon a good consideration. (2) *Sufficiency of Agreement—Instances of Valid Agreements*—The agreement to waive the right of set-off may be made by an agreement either express or implied. An agreement to pay in a specific way has been held to waive the right

of set-off." Citing *Tagg* v. *Bowman,* 108 Pa. 273, 56 Am. Rep. 204; *Mulliken* v. *Winter,* 2 Duv. (Ky.) 256, 87 Am. Dec. 495.

In 57 C. J., page 376, section 23, is found this statement of the rule:

*"In General.* In accordance with the well settled principle that an individual may waive any statutory or constitutional provision intended for his benefit, one having the right of set-off may waive it; but where an agreement is relied on in justification of a departure from the general rules governing set-off, it must appear that the proposed set-off is embraced therein.

"Section 25. Waiver of Right to Interpose. A defendant may, on valuable consideration, waive the right to use a set-off which would otherwise be available. Although it is generally held that waiver of set-off may be either express or implied, it has been held that the agreement must be express and cannot be inferred from equivocal words, nor deduced from ambiguous expressions."

In the case of *Lutz* v. *Williams, et al.,* 79 W. Va. 609, 91 S. E. 460, L. R. A. 1918A, 76, it was held that, although there was some conflict of authority on the subject, an agreement waiving a statutory right of set-off is now generally accepted in this country as valid and binding and such an agreement may be express or implied.

In the instant case Armour and Company was willing to assist Norton Coal Company in disposing of its products, in order to enable it to collect its account. The Norton Coal Company was willing to apply as much of its product as it could spare to the payment of the Armour and Company debt, in consideration of the fact that Armour and Company assisted it in disposing of some of its coal. The parties thereupon got together upon this agreement, which they considered to their mutual advantage. This being the case it seems to us that by express agreement Armour and Company are barred from off-setting its claim against this particular account for the coal shipped it, and that there was

a valuable consideration for such waiver, as held by the trial court.

The remaining assignments of error relate to the refusal of the court to give certain instructions for the defendant below, which, it is conceded, are at variance with the conclusions reached by the trial court and herein expressed. We, therefore, deem it unnecessary to discuss such assignments in detail.

For the above reasons, we are of the opinion that the judgment of the trial court must be affirmed.

*Affirmed.*