# Richmond.

## CARPENTER v. SMITHEY.

March 16, 1916.

Absent, Kelly, J.

1. EVIDENCE—*Admissibility—General Objection.*—Where evidence is offered, a portion of which is objectionable and the other not, and the objection thereto is general, it must be overruled. The objection, to be available, must point out specifically the objectionable features.

2. EVIDENCE—*Part of Record Only—Objection—Case at Bar.*—In the case at bar, in which an attorney was suing for a fee which was conditioned upon the client's success in a suit which the attorney was conducting for him, it was not error to refuse to allow the defendant to introduce in evidence the bill filed by said attorney for his client, without the residue of the record in the case. There was evidence tending to show that the result of the litigation was beneficial to the client, although he did not get all he claimed in the bill, and it was necessary.to the ends of justice that the whole record should be introduced, in order that the trial court and the jury might see whether or not there had been a substantial benefit to the client as a result of the litigation, although the result fell short of the case made by the bill and the prayer for relief based upon it.

3. APPEAL AND ERROR—*Remarks of Trial Court to Jury—Effacing Consequences.*—A remark made by the court to the jury, even if improper, will not constitute reversible error, where the appellate court is satisfied that the subsequent action of the court was sufficient to efface any injurious consequences which the original remark may have caused.

4. INSTRUCTIONS — *Evidence Sufficient to Support Verdict — Scintilla Rule.*—While the scintilla rule has been disapproved, yet whenever there is evidence before the jury which would support a verdict upon a motion to set it aside, the court is obliged to instruct if requested so to do.

5. INSTRUCTIONS—*Misleading—Case at Bar.*—In an action by an attorney against his client to recover counsel fees conditioned upon the successful conduct of certain litigation, it is misleading to instruct the jury that there can be no recovery for the plaintiff if they believe

that the said litigation terminated in favor of the adverse party, where the evidence shows that it was in part, at least, favorable to the client.

6. INSTRUCTIONS—*Directing Verdict—When Improper.*—It is error to give an instruction directing a verdict for the plaintiff or the defendant, unless every material fact bearing upon such instruction be brought to the attention of the jury.

7. ASSUMPSIT—*Special Contract—Common Counts—Contract Fully Performed—Counsel Fees.*—*Indebitatus assumpsit* will lie to recover the value of work done under a special contract, if it be fully executed on the part of the plaintiff, and nothing remains to be done under it but the payment of a sum of money by the defendant. The existence of this state of facts raises an implied promise to pay the money. Although an attorney, therefore, may have been employed for a stipulated compensation, if he has fully rendered the services agreed upon, he may maintain *indebitatus assumpsit* for his fee, where nothing remains to be done but payment by the client.

8. APPEAL AND ERROR—*Verdicts—Conflicting Evidence.*—The verdict of a jury rendered upon conflicting evidence will not be disturbed by the appellate court.

Error to a judgment of the Circuit Court of Brunswick county in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given on motion of the plaintiff:

"A."

The court instructs the jury that the burden is upon the plaintiff to prove his account against the defendant by a preponderance of the evidence; and that the burden is likewise upon the defendant to prove his account of offsets against the plaintiff by a preponderance of evidence. And if the jury believe from the evidence that the plaintiff has so proved that the defendant is indebted to him in excess of what you may find from the evidence he owes the defendant you should find for the plaintiff the amount of such excess; but if you believe

from the evidence that the defendant has so proved that the plaintiff is indebted to him in excess of what you may believe from the evidence the defendant owes the plaintiff, then you should find for the defendant the amount of such excess.

### "B."

The court further instructs the jury that if they believe from the evidence that the defendant purchased the interest of the plaintiff in the tract of land known as "Woodlawn Farm," for $1,000.00 which was afterwards conveyed to the defendant's wife, with the consent of the plaintiff, by the Brunswick Realty Company, then the plaintiff is entitled to recover of the defendant the sum of $1,000.00 claimed, on account of said purchase, in his account filed with the declaration in this case, whether the interest of the plaintiff in said land was that of an individual owner of the said land, or that of a stockholder in the Brunswick Realty Company, a corporation.

### "C."

The court further instructs the jury that if they believe from the evidence that the defendant, W. R. Carpenter, employed the plaintiff, Marvin Smithey, as his attorney at law, to conduct on his behalf the litigation between the defendant and the Camp Manufacturing Company, with respect to the timber and railroad rights claimed by the Camp Manufacturing Company upon the tract of land known as the "John W. Harrison" farm, and that the defendant agreed to pay the plaintiff as a fee, contingent upon the result of said litigation, one-half of the difference between the sum of $7,000.00 and whatever sum might be realized by the defendant on a subsequent sale of the said land, in excess of the said sum of $7,000.00, or one-half of the pecuniary value of such benefits as might accrue to the defendant as a result of said litigation, in excess of the said

sum of $7,000.00, and that as a result of said litigation, the Camp Manufacturing Company was required by the Supreme Court of Appeals of Virginia to remove said timber within one year from the date of the certification of its decree to this court and thereafter the said W. R. Carpenter sold the said land for $12,000.00 to Lundy Powell, then in a settlement of the accounts between the plaintiff and defendant, the defendant is chargeable with the fee of $2,500.00 charged by the plaintiff in his account against the defendant.

## "D."

The court instructs the jury that the only bearing whatever that the evidence with regard to the financial circumstances of the said Marvin Smithey may have had on the issue in this action, and the only purpose for which it can be considered at all by the jury, is as it may or may not tend to show whether or not the said W. R. Carpenter owed to the said Marvin Smithey the debt claimed by the said Marvin Smithey in this action, and if they believe from the evidence that under all the circumstances of the case the said W. R. Carpenter is indebted to the said Marvin Smithey in any amount or amounts as claimed by the said Marvin Smithey in this action, the fact that said Marvin Smithey was in straitened circumstances at the time said indebtedness was due to him by the said W. R. Carpenter cannot affect his right to recover in this action, for said amounts.

The following instructions were given on motion of the defendant:

## TWO.

The court further instructs the jury that if they believe from the evidence that the plaintiff, Marvin Smithey, executed to the Bank of Brunswick, and delivered the proceeds thereof to the defendant, W. R. Carpenter, a note for the sum of $1,785.00 for money due said Carpenter, on the 18th day of November,

1912, and the said note was executed after the date of any debt claimed by said Smithey to be due him by said Carpenter or any service rendered by the plaintiff, Smithey, to the said W. R. Carpenter, for which he now claims pay, and that the plaintiff, Smithey, continued to pay the discount on said note for fourteen months thereafter without rendering any account of such debts or charges to the said W. R. Carpenter, or ever demanding of him pay for same, that such conduct on the part of said Smithey, in the absence of proof to the contrary, raises a strong presumption of the payment and satisfaction of any account due said Smithey prior to the execution of said note, and unless the jury believe that such presumption has been rebutted by the evidence they should find for the defendant, W. R. Carpenter, as to all claims antedating said note.

## FIVE.

The court further instructs the jury that if they believe from the evidence that the litigation between the Camp Manufacturing Company and the said W. R. Carpenter grew out of controversies over the John Harrison farm or the timber thereon, and that the said Marvin Smithey entered into an agreement whereby he was to prosecute and defend the said litigation between the Camp Manufacturing Company, and the said W. R. Carpenter, for one-half of the timber on the said farm, and that W. R. Carpenter did not recover the said timber by virtue of said litigation with the Camp Manufacturing Company, then the said Marvin Smithey is not entitled to recover any fee for said service, and they should find for the defendant, W. R. Carpenter, as to the fee of $2,500.00 charged in his account for said services.

## SEVEN.

The court further instructs the jury that the defendant, W. R. Carpenter, is entitled to receive interest on any money collected by the said plaintiff, Marvin Smithey, for the said

W. R. Carpenter, and if they believe from the evidence that the said plaintiff, Smithey, has received any amounts due the defendant, Carpenter, from other parties and has not paid the same over to the said W. R. Carpenter, then the said W. R. Carpenter is entitled to interest upon said amounts, whenever they believe that said Carpenter is entitled to recover the principal accounts upon which such interest is claimed.

## NINE.

The court further instructs the jury that if they believe from the evidence that R. B. Davis was not employed by W. R. Carpenter, but was employed by Marvin Smithey to assist him in the litigation between the Camp Manufacturing Company and W. R. Carpenter, and the said Smithey requested W. R. Carpenter to advance the sum paid said Davis, then they are instructed that all amounts advanced by said W. R. Carpenter to said R. B. Davis for said Smithey is a charge against the said Smithey and should be allowed to the said W. R. Carpenter as claimed in his account of offsets filed in this suit.

The following instructions were asked for by the defendant but refused:

## ONE.

The court instructs the jury that the burden is upon the plaintiff, Marvin Smithey, to prove to the satisfaction of the jury by a preponderance of the evidence every item constituting the claim set forth in the account filed with is declaration, and in considering the account they can only allow such items thereof as are proven to be due by such preponderance of evidence.

## FOUR.

The court further instructs the jury that if they believe from the evidence that the said Marvin Smithey entered into an

agreement with the said W. R. Carpenter, whereby the said Smithey was to prosecute and defend all litigation between the Camp Manufacturing Company and the said W. R. Carpenter, in regard to the Harrison farm or the timber thereon, upon the terms that if the said Carpenter was successful in the litigation, that the said Marvin Smithey was to receive for said services one-half of the proceeds of the timber on the said John Harrison farm and that the said litigation between the Camp Manufacturing Company and the said W. R. Carpenter terminated in favor of the Camp Manufacturing Company, then he is not entitled to recover for said services, and they should find for the defendant, W. R. Carpenter, as to the fee of twenty-five hundred ($2,500.00) dollars charged in his account for said service.

## SIX.

The court further instructs the jury that if they believe from the evidence in this case that the said plaintiff, Marvin Smithey, entered into an agreement that he was to receive for his services in the litigation between the Camp Manufacturing Company and W. R. Carpenter, as to the fifteen foot strip, which had for its object the sale of the Harrison farm, any portion or part of such recovery in said litigation and that the said W. R. Carpenter was to pay the court costs of said litigation, and that by virtue of the said litigation the Camp Manufacturing Company recovered of the said W. R. Carpenter a judgment for $800.00 on account of an injunction order, issued against the said Camp Manufacturing Company at the instance of the said W. R. Carpenter, that such an amount is not a part of the costs of the said litigation, but damages as the result of said litigation and therefore should be paid equally by the said Marvin Smithey and the said W. R. Carpenter. And if they believe further that the said W. R. Carpenter paid the whole

of the said judgment he is entitled to recover one-half of the same from the said Marvin Smithey to be applied as a set off upon any demands or claims of the said Marvin Smithey.

## EIGHT.

The court further instructs the jury that if they believe from the evidence that the plaintiff and the defendant entered into an agreement whereby they were to become partners in purchasing land adjoining the John W. Harrison farm, or in that neighborhood, for the purpose of preventing the Camp Manufacturing Company from conducting its business and operating its railroad, without first buying the said John W. Harrison farm at a price of $20,000.00, of which amount $10,000.00 was to be allowed to W. R. Carpenter, the owner of the said farm, and the residue of $10,000.00 was to be divided equally between the said W. R. Carpenter and Marvin Smithey, and in carrying out said agreement they attempted to purchase land of Wm. A. Conell, and others, and that the said Camp Manufacturing Company refused to buy said farm at the price of $20,000.00, and upon such refusal, suit was instituted by said Carpenter to recover said timber on the said farm upon the terms that the said Smithey was to receive as his compensation for conducting said litigation one-half of said timber on said farm, if so recovered, and that if said timber was not recovered in said suit, then the said Smithey is not entitled to recover any fee for said services.

## TEN.

The court further instructs the jury that if they believe from the evidence that on the 30th day of October, 1909, H. L. Heartwell and others conveyed to W. R. Carpenter, Marvin Smithey and F. W. Davis, the "Woodlawn Farm," and that afterwards, on the first day of November, 1909, the said W. R.

Carpenter, Marvin Smithey and F. W. Davis conveyed the said Woodlawn tract to the Brunswick Realty Company, the court instructs the jury as a matter of law, that by virtue of the deed of November 1, 1909, the title to the said tract of land passed to the Brunswick Realty Company along with all interest of the said Marvin Smithey in the said tract, and that the only evidence of ownership or interest in said farm was his stock in said corporation, and unless they believe that the said Carpenter agreed to give said Smithey $1,000.00 for his stock in said corporation, and that said Smithey offered to deliver said stock, they must find for the defendant as to the item of $1,000.00 in the account of the said Smithey.

The following instruction was offered by the defendant and the court refused to give it as offered, but gave it in a modified form:

THREE (as offered).

The court further instructs the jury that in reaching a verdict in this case it is their duty to consider the condition of the parties, their relationship with one another, their financial condition or other circumstances, and if they believe from the evidence that any of the items contained in the account of plaintiff, Smithey, are claims for services rendered prior to the execution by the said Smithey of a note to the said Carpenter for the sum of $1,785.00 on the 18th day of November, 1912, for money due the said Carpenter by the said Smithey, and that the said Smithey paid interest on the said note for fourteen months thereafter without rendering an account of, or giving any notice of his claim to the said Carpenter for such services claimed to be due him until the institution of this suit, and that the said Carpenter has always been solvent, that he has paid his obligations promptly, and that he could have paid the alleged debt of the plaintiff when demanded and that the said Smithey at the time of the execution of the said note to the said Carpenter, and since then, has been in pressing circum-

stances, badly in need of funds to meet his obligations, and that his creditors have resorted to courts of law to collect their debts, that such circumstances and conduct on the part of the said plaintiff, in the absence of proof to the contrary, raises a strong presumption of the satisfaction and payment of all demands of the said Smithey, for it is reasonably to be presumed that the said Smithey would not have executed said note and paid the interest thereon and allowed his financial affairs to become in such shape if the defendant was indebted to him in a larger amount than the plaintiff was indebted to the defendant at the time the note was executed; and unless the jury believe from the evidence that this presumption has been overcome by clear and convincing proof, they must find for the defendant as to all items of said account prior to the execution of the said note on the 18th day of November, 1912.

## THREE (as given).

The court instructs the jury further that in reaching a verdict in this case it is their duty to consider the condition of the parties, their relationship to one another, their financial condition or other circumstances, and if they believe from the evidence that any of the items contained in the account of plaintiff, Smithey, are claims for services rendered prior to the execution by the said Smithey of a note to the said Carpenter for the sum of $1,785.00 on the 18th day of November, 1912, for money due the said Carpenter by the said Smithey, and that the said Smithey paid interest on the said note for fourteen months thereafter without rendering an account of, or giving any notice of, his claim to the said Carpenter, for such services claimed to be due him until the institution of this suit, and that the said Carpenter has always been solvent, that he has paid his obligations promptly, and that he could have paid the alleged debt of the plaintiff when demanded and that the said Smithey at the time of the execution of the said

note to the said Carpenter, and since then, has been in pressing circumstances, badly in need of funds to meet his obligations, and that his creditors have resorted to courts of law to collect their debts, that such circumstances and conduct on the part of the said plaintiff, in the absence of proof to the contrary, raises a presumption of the satisfaction and payment of all demands of the said Smithey, and unless the jury believe from the evidence that this presumption has been overcome by satisfactory proof, they must find for the defendant as to all items of said account prior to the execution of said note on the 18th day of November, 1912.

*Turnbull & Turnbull* and *Jeffries & Jeffries,* for the plaintiff in error.

*Buford & Peterson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Marvin Smithey brought an action of *assumpsit* against Carpenter to recover fees for his services as an attorney at law. The declaration contains the common counts and is accompanied by an itemized account containing very numerous items of credit and debit, which results in a balance due to the plaintiff of $2,307.90. The defendant pleaded *non-assumpsit* and filed his grounds of defense and notice of offsets. A great mass of evidence was introduced which resulted in a verdict and judgment for the plaintiff for $2,000, to which a writ of error was awarded.

Certain exceptions were taken by the defendant to the introduction of evidence, which we shall first consider.

The plaintiff went upon the stand to testify in his own behalf, and was called upon to state the nature of his services with respect to the item of $2,500, which appears in his account as of June 20, 1912, being the fee charged in the case of

*Carpenter* v. *Camp Mfg. Co.* The plaintiff went on to make his statement with respect to the litigation between Carpenter and the Camp Manufacturing Company in which he had been employed. In this statement he gave his version of the contract between himself and Carpenter under which the services were rendered, and went into many details bearing on his right to recover, which for the purpose of the assignment of error we are now considering need not be more specifically stated. His examination had covered about twelve pages of the record and the witness had fully stated the terms of the contract under which he claims the services were rendered to Carpenter, when counsel for the defendant interposed and said, "We object to Mr. Smithey's entire statement." The objection was overruled and an exception noted, which is presented in plaintiff in error's bill of exception No. 4.

In *Norfolk and Western R. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226, this court said: "Objections to the admission or exclusion of evidence, or to giving or refusing to give instructions, should be brought directly to the attention of the trial court, and, if overruled, a proper bill of exceptions should be taken specifically and definitely setting forth the allegation of error and so much of the evidence as is necessary to render clear the propriety or impropriety of the ruling of the trial court: otherwise the exception, though noted at the time, will be treated, by the appellate court, as waived or abandoned." *N. & W. R. Co.* v. *Shott,* 92 Va. 34, 22 S. E. 811.

In *Washington, &c. R. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834, it is said that "Where evidence is offered, a portion of which is objectionable, and the other not, and the objection is general, it must be overruled. And so of two or more ordinances, one of which is objectionable. The objection must point out specifically the objectionable features."

It may be conceded, therefore, that the evidence objected to contained matter which should have been ruled out, yet it was not brought to the attention of the court in a proper manner.

That there is much in the statement of the witness which the court was asked to exclude which was pertinent to the issues to be tried cannot be questioned, and under the authorities which we have cited a general objection was properly overruled.

Bill of exceptions No. 8 has reference to an item of $1,000 in the defendant in error's account. The plaintiff had testified as to this item, claiming that Carpenter owed him for a one-third undivided interest in a tract of land known as "Wood-lawn" farm. After the witness had testified quite fully as to this item, he was asked by the court: "Does Mr. Carpenter owe you anything?" Witness: "Yes, he owes $1,000.00 for my interest in that farm." The court: "How does he owe it to you?" Thereupon counsel for plaintiff in error interposed an objection which the court overruled, and bill of exceptions No. 6 was taken by the defendant.

We think the evidence was relevant and tended to prove the issue joined between the plaintiff and the defendant, and the exception is overruled.

The plaintiff in error bases one of his assignments upon bills of exceptions Nos. 5 and 8, taken to rulings of the court. During the progress of the trial the defendant handed to the plaintiff who was upon the stand testifying in his own behalf, a copy of a bill which he had filed as attorney in the case of *Carpenter* v. *Camp Manufacturing Company,* and in which a fee of $2,500 was charged, and was asked to read the bill and state if it was the bill for which he charged this fee. To the introduction of the bill counsel for the plaintiff objected, unless the entire record was put in evidence. The court sustained the objection and exception No. 5 was duly taken.

In 3 Wigmore on Evidence, sec. 2110, it is said: "A judicial record, made up as it is of separate documents and entries representing the successive stages in the proceedings, is of all records the one which most requires the application of the principle of completeness; and it is to this kind of record that the

judicial utterances already quoted (in section 2108) chiefly refer. Without considering the plaintiff's statement of claim, the defendant's statement of defense, the intermediate motions and orders, the verdict, and the later doings, it is impossible to ascertain what are the terms of the judgment which is to be proved and acted on."

In the case before us it was especially necessary to an understanding of the situation that the entire record should be produced. The consideration of a part of it might have led to the greatest injustice. The plaintiff was suing for services rendered in the prosecution of that suit, which he had conducted upon a contingent fee conditioned upon the plaintiff's success. There is evidence in the case tending to show that the result of the litigation was beneficial to the plaintiff, although he did not succeed to the full extent of the case made in the bill; therefore, it was necessary to the ends of justice, in order that the trial court and the jury might see whether or not there had been a substantial benefit to the plaintiff as a result of the litigation, although the result fell short of the case made by the bill and the prayer for relief based upon it. We think there was no error in refusing to permit the bill to be read without the introduction of the complete record.

Objection No. 8 is, we think, sufficiently covered by what we have said with respect to bill of exceptions No. 4. The objection to the evidence is too general. It should have specifically stated the parts objected to and not have left it to the court to separate the good from the bad.

An exception was taken by the defendant to a remark made by the court in the presence of the jury to the following effect:

"The court: I think if he made the contract which Mr. Smithey has sworn to, I think he is entitled to the money if the jury believes it."

At a subsequent day of the trial the court said: "Either on Wednesday or Thursday, when Mr. Smithey was on the stand, after he finished his statement, he made reply to counsel's

opening statement, which defendant's counsel moved to strike
out of the record. I overruled the motion. I don't know that I
was right. I want to sustain the motion and want to say to Mr.
Smithey that he can testify to any fact proven touching the
statement made by counsel for the defendant which stands in
lieu of the reply that he made on Wednesday or Thursday, and I
strike out of the record his reply to the opening statement, which
leaves him now the right to reply to any matter which counsel
touched upon in his opening statement."

"Mr. Turnbull: In other words, you put him back where
he was, that he is allowed to testify to the facts before the
jury?"

Without undertaking to decide whether the remark made by
the court constituted reversible error, we are satisfied that the
subsequent action of the court was sufficient to efface any
injurious consequences which the original remark may have
caused.

We discover no merit in the seventh assignment of error and
it is overruled.

After the evidence was all in, certain instructions were
presented.

Instruction marked "A," offered by the defendant in error,
is not objected to. Instruction "B" is objected to because it is
claimed there is no evidence to support it.

In *C. & O. Ry. Co.* v. *Stock,* 104 Va. 97, 51 S. E. 161, it is
true we disapproved what is known as the scintilla rule, which
required the court to give an instruction if there was any evi-
dence whatever to support it, although it might be compelled
to set aside a verdict rendered in accordance therewith. But
wherever there is evidence before the jury which would support
a verdict upon a motion to set it aside, the court is obliged to
instruct if requested so to do.

There is testimony tending to prove every fact upon which
the instruction is predicated, and the law applicable to the
facts, if found by the jury, is we think correctly stated in the
instruction.

Instruction "C" given at the instance of the defendant in error, is also objected to upon the ground that it assumed the existence of a fact which should have been referred to the jury. We do not think the instruction is open to this objection. The petition says that "the court will readily see that this instruction is erroneous for the reason that the court, in giving this instruction, assumed that because your petitioner afterwards sold his farm for $12,000 that he had been benefited to the extent of $5,000.00 by virute of said litigation." We do not think the instruction makes any such assumption. The jury were told that if they believed from the evidence that the defendant, Carpenter, employed the plaintiff, Smithey, as his attorney to conduct on behalf of Carpenter the litigation between Carpenter and the Camp Manufacturing Company with respect to the timber and railroad rights claimed by the company upon the tract of land known as the John W. Harrison farm, "*and that the defendant agreed to pay the plaintiff,* as a fee contingent upon the result of said litigation, one-half of the difference between the sum of $7,000.00 and whatever sum might be realized by the defendant on a subsequent sale of the said land, in excess of the said sum of $7,000.00,"—that is to say, if the jury found certain facts, and if as the result of the existence of those facts the defendant had agreed to pay a certain fee, he was responsible by force of his agreement: and in that we think there was no error. We shall have more to say about the agreement when we come to consider the motion to set aside the verdict as contrary to the evidence.

The petition assigns as error the refusal of the court to give instruction No. 4. It is only necessary to refer to the reported case of *Carpenter* v. *Camp Mfg. Co.,* 112 Va. 300, 71 S. E. 559, to show that this instruction should have been refused, if for no other reason, because it was calculated to mislead the jury. That suit was decided in the circuit court in favor of the Camp Manufacturing Company. Carpenter appealed, and the decree was reversed in this court. The contention of the

Camp Manufacturing Company was that it had an indefinite time, upon the payment of interest on the agreed price, within which to cut and remove the timber. Carpenter claimed, it is true, that all right to the timber was forfeited by a failure to remove within the five years. This court took a middle ground and held that the removal of the trees must take place within a reasonable time after the expiration of the fixed period. That this was favorable to Carpenter is, we think, beyond dispute.

During the progress of the litigation Carpenter sued out an injunction, which was afterwards dissolved, and Carpenter was held to pay $800 as damages for improperly suing out the injunction, and by instruction No. 6 the court was asked to tell the jury that Smithey should be required to pay one-half of the sum awarded as damages. That the parties might have entered into such an agreement is true, but we are unable to discover any evidence in this record of their having done so, and the instruction was, we think, properly refused.

Instruction No. 10, which refers to the item of $1,000 in the account filed with the declaration, was, we think, properly refused, because it is a partial and inadequate statement of the facts upon which the plaintiff based his claim, and directs the jury to find for the defendant, when we have often held that to justify such a direction every material fact bearing upon the instruction must be brought to the attention of the jury.

Upon the whole case, we are of opinion that instructions "A," "B," "C," and "D," asked for on behalf of the plaintiff and given by the court, and instructions 2, 5, 7 and 9, given at the instance of the defendant in the court below, sufficiently covered the law of the case, and that there was no error in refusing to give instructions Nos. 1, 4, 6, 8 and 10.

The plaintiff in error seems to rely in great measure on a contention he makes, that the declaration contains only the common counts, while the plaintiff in the court below, if entitled to recover at all; must do so by force of the contract between him and Carpenter, which should have been pleaded

in a special count, and in support of this proposition he cites *Brooks* v. *Scott,* 2 Munf. (16 Va.) 344, the syllabus of which states that, "In an action of general *indebitatus assumpsit,* for services rendered as an overseer, or of *quantum meruit* for like services, the plaintiff cannot give in evidence proof that the defendant had employed him as an overseer and was to pay him a certain quantity of tobacco. In such case he should declare upon the special agreement." Judge Cabell, in the course of his opinion, says: "It is true that with respect to debts for work and labor, or other personal services, the rule is, that, however special the agreement was, yet if it was not under seal and the terms of it have been performed on the plaintiff's part, and the remuneration was to be in money, the party may declare either specially on the original executory agreement, or in *indebitatus assumpsit,* on the express promise to remunerate (if there was one), or on the promise which the law implies on the execution of the agreement. But this rule, so far as it relates to the *indebitatus assumpsit* count, has never been carried farther than to those cases where the remuneration contemplated by the parties was to be in *money.*" And that case went off upon the proposition that the remuneration was to be in *tobacco.*

In *B. & O. R. Co.* v. *Polly, Woods & Co.,* 14 Gratt. (55 Va.) 448, it is said that *"Indebitatus assumpsit* will lie to recover the value of work done under a special contract, if it be fully executed on the part of the plaintiff, and nothing remain to be done under it but the payment of a sum of money by the defendant. The existence of this state of facts raises an implied promise to pay the money."

That is precisely this case. If the testimony of the defendant in error is to be believed (and his credibility is wholly for the jury), he had rendered the services which he had promised to perform and nothing remained to be done but the payment of the compensation in money.

Considering the testimony in the case, as upon a demurrer to the evidence, we find that it is quite sufficient to sustain the verdict. The criticisms made of it go rather to the credibility of the witnesses than to the probative force of their testimony if it be accepted as true. The contract of employment is clearly and succinctly stated by the defendant in error in his testimony. "My first fee," he said, "was based on a contingency, and the second fee was based on a contingency. Here is my agreement with Mr. Carpenter. I had done all this, and had not received a penny in the way of compensation. He said, 'All you can get over and above $7,000, whether by sale of the plantation or out of the benefits accruing to me, all over $7,000 I will pay you.' He was to pay me one-half of all over $7,000. I went ahead and pushed that case with all the vigor of which I was capable."

Instead, therefore, of leaving the jury to weigh testimony as to the value of the benefits which Carpenter received from the services of Smithey, the parties themselves, as it were, liquidated the value of the services and established a plain and simple test by which their value was to be determined and ascertained— that is, the value of the Harrison farm, subject to the incumbrances resting upon it by virtue of the timber contracts, was estimated at $7,000, and in case of its sale all above that sum was to be divided between Smithey and Carpenter. Carpenter's view of the contract is very different, but the jury heard them both testify and accepted Smithey's statement as true.

Another point of divergence between the testimony of the plaintiff and that of the defendant is with respect to the employment of counsel to aid the plaintiff in the litigation which he was employed to conduct. On behalf of Carpenter it is earnestly contended that additional counsel was employed by Smithey because he found himself unequal to the task which he had undertaken, while Smithey, on the other hand, testified that the additional counsel was employed by Carpenter of his own motion, and that he (Smithey) had nothing to do with it.

And so with other minor contentions, which need not be specifically stated; the record shows a conflict of evidence along the whole line between the plaintiff and the defendant. All these differences were determined by the verdict of the jury, who both saw and heard the witnesses, in favor of Smithey.

Upon the whole case, we are unable to discover reversible error, and the judgment is, therefore, affirmed.

*Affirmed.*