# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA.

---

### Richmond.

### BOWEN'S EXECUTOR AND OTHERS v. BOWEN AND OTHERS.

November 15, 1917.

1. APPEAL AND ERROR—*Omission of Bills of Exception from Record—Dismissal.*—A motion to dismiss a writ of error was based uopn the fact that the petition, when presented to the judge awarding the writ, was not accompanied by a complete transcript of the record, as by some inadvertence the bills of exception were omitted. Afterwards and before the motion was presented to the court, the plaintiffs in error applied to one of the judges of the Supreme Court of Appeals under section 3463, of the Code of 1904, for a writ of *certiorari*, requiring the clerk to transmit such portions of the record as had been theretofore omitted from the transcript. In response to this writ, the record was completed long before the motion was made, and was amply sufficient to present for the consideration of the court all of the errors which were assigned in the petition. The motion to dismiss the writ was therefore overruled.

2. EXPERT AND OPINION EVIDENCE—*Hypothetical Question—General Objection.*—Hypothetical questions propounded to expert alienists as to the testamentary capacity of the testator fairly embodied, in narrative form, the evidence relied upon by the opponents of the will to show the incapacity of the testator.

*Held:* That general objections to the questions not specifying what particular parts of the questions or answers were objected to, if overruled, were of no avail on appeal.

1

3. EXPERT AND OPINION EVIDENCE—*Hypothetical Questions.*—While it is perfectly well settled that a hypothetical question to an expert witness must embody all of the material facts which the evidence tends to prove affecting the question upon which the expert is asked to express an opinion, it is not necessary that such question should embody all of the immaterial facts. If there be any facts or testimony omitted which the exceptant thinks are material, it is his duty to clearly indicate such defects to the court, and thereupon the court should require the propounder of the question to supply such omissions in the question as are material, so as to enable the expert to answer the question after being fully and definitely informed of all of such material facts.

4. APPEAL AND ERROR—*Question Raised for First Time on Appeal—Hypothetical Questions.*—Suggestions as to the insufficiency of the hypothetical questions which are made in the petition for writ of error and brief of counsel should have been made in the trial court, and it is too late to make such suggestions for the first time on appeal.

5. NEW TRIALS—*Motion to Set Aside Verdict as Contrary to the Law and Evidence.*—In considering a motion to set aside a verdict as contrary to the law and the evidence, the Supreme Court of Appeals is controlled by the demurrer to the evidence rule, section 3484 of the Code of 1904, and is prohibited from setting aside any verdict merely because of a serious conflict in the evidence. The motion cannot prevail unless the evidence upon which the verdict of the jury is based is clearly insufficient to support it.

6. WILLS—*Costs—Contest—Executor.*—Where the executor named in the supposed testamentary paper, in the performance of his duty, offers it for probate, his costs are taxed against the estate.

7. WILLS—*Costs—Contest—Beneficiary Under the Will.*—Where in the contest of a will it appeared that the beneficiary was the active litigant, seeking probate of the will, the contest being one between him as a beneficiary on the one hand, and the heirs at law of the decedent on the other, if the heirs at law prevail they may properly be awarded their costs against their adversary.

. Error to a judgment of the Circuit Court of Albemarle county, declaring a will invalid.

*Judgment affirmed.*

The opinion states the case.

*Allen & Walsh* and *E. O. McCue,* for the plaintiffs in error.

*Gilmer & Gilmer, Chas. A. Hammer* and *D. O. Dechert,* for the defendants in error.

PRENTIS, J., delivered the opinion of the court.

A paper writing purporting to be the last will and testament of Lucius M. Bowen, deceased, in which he bequeathed and devised his entire estate to H. A. Sandridge, having been admitted to probate by the clerk of the court, one of the heirs at law, T. F. Bowen, appealed therefrom to the circuit court under section 2639-a of the Code. Upon such appeal the court made up the issue to be tried by the jury between the proponents of the will, Early and Sandridge, as complainants, and the contestants, the heirs at law of the decedent, as the defendants. On this issue the jury found that the will was invalid.

Before referring to the assignments of error, it is proper to dispose of a motion made by the defendants in error to dismiss the writ upon the ground that it was improvidently awarded. This motion is based upon the fact that the petition, when presented to the judge of this court by whom the writ of error was awarded, was not accompaned by a complete transcript of the record in the case. The record presented included the transcript of the evidence but through some inadvertence the bills of exception were omitted. It is contended that because of this omission the writ could not be lawfully allowed. Afterwards and before the motion was presented to the court, the plaintiffs in error applied to one of the judges of this court under section 3463 for a writ of *certiorari,* requiring the clerk to certify and trans-

mit such portions of the record as had been theretofore omitted from the transcript. In response to his writ, the record was completed long before the motion was made, and is now amply sufficient to present for the consideration of the court all of the errors which are assigned in the petition. The motion to dismiss the writ is therefore overruled.

There are five assignments of error. Three of them may be considered together. These are the exceptions to certain hypothetical questions propounded to three physicians, two of whom are well known expert alienists, as to the testamentary capacity of the testator, and to the answers of these witnesses to such questions. The three questions are substantially similar, and each covers about fourteen pages of the printed record. They fairly embody, in narrative form, the evidence relied upon by the opponents of the will to show the incapacity of the testator. The exception in each instance is general, and there is no specification whatever as to what particular parts of such questions or answers are objected to. It would seem to be a sufficient answer to these exceptions to quote from section 18, volume I, Wigmore on Evidence: "The cardinal principle (no sooner repeated by courts than it is forgotten by counsel) is that a general objection, if overruled, cannot avail." *Bain* v. *Whitehaven & H. R. Co.,* 3 H. L. C. 1, 16; *Bundy* v. *Hyde,* 50 N. H. 116, 121; *Rush* v. *French,* 1 Ariz. 99, 123, 25 Pac. 816; *Sigafus* v. *Porter,* 84 Fed. 430, 435, 28 C. C. A. 443; *Warren* v. *Warren,* 93 Va. 74, 24 S. E. 913; *N. & W. Ry. Co.* v. *Ampey,* 93 Va. 125, 25 S. E. 226; *Lambert* v. *Jenkins,* 112 Va. 382, 71 S. E. 718; Ann. Cas. 1913-B, 778; *Norfolk, etc., Co.* v. *Norfolk,* 115 Va. 179, 78 S. E. 545, Ann. Cas. 1914-B, 1067; *Carpenter* v. *Smithey,* 118 Va. 544, 88 S. E. 321; *Camden* v. *Doramus,* 3 How. 515, 11 L. Ed. 705; *Burton* v. *Driggs,* 20 Wall. 125, 22 L. Ed. 299.

In such cases much must be left to the discretion of the trial court, and it can hardly be doubted that if the criticisms made for the first time here in the briefs of counsel had been made in the trial court, it is probable that the question would have been to some extent changed.

In Jones on Evidence, section 371, this is stated: "The question is not necesarily to be rejected by the court although the facts assumed by counsel to be true are not proved, or although the question does not state the facts as they actually exist. The facts are generally in dispute; and it is sufficient if the question fairly state such facts as the proof of the examiner fairly tends to establish, and fairly presents his claim or theory. It cannot be expected that the interrogatory will include the proofs or theory of the adversary, since that would require a party to assume the truth of that which he generally denies." Wigmore on Evidence, section 682, clause (c).

While it is perfectly well settled that a hypothetical question to an expert witness must embody all of the material facts which the evidence tends to prove affecting the question upon which the expert is asked to express an opinion (*N. & W. Ry. Co.* v. *Spears,* 110 Va. 116, 65 S. E. 482; *City of Richmond* v. *Wood,* 109 Va. 75, 63 S. E. 449; *Lester* v. *Simpkins,* 117 Va. 68, 83 S. E. 1062), it is not necessary that such question should embody all of the immaterial facts. If there be any fact or testimony omitted which the exceptant thinks is material, it is his duty to clearly indicate such defects to the court, and thereupon the court should require the propounder of the question to supply such omissions in the  questions as are material, so as to enable the expert to answer the question after being fully and definitely informed of all of such material facts.

The hypothetical question propounded in this case was carefully drawn to present the theory of the opponents of the will, and upon cross-examination, the proponents of the will asked each of these same witnesses questions which

indicated their theory of the case, and the answers of the witnesses in each instance sustained the theory of the propounder of the question—that is, when the evidence tending to prove the testator's insanity or imbecility was narrated the witnesses expressed the opinion, if this evidence was true that he was insane, and when conflicting evidence tending to prove his sanity was narrated, they expressed the opinion, if this evidence was true, that he was sane. The jury had all of this conflicting evidence before it, which they must be presumed to have weighed and understood. In order to enable the expert to express an opinion which will be of value, such an interrogatory should embody all of the facts pertinent to the issue involved in the question, as to which there is no conflict in the evidence, together with the other evidence relied upon by the propounder of the question for the determination of such issue in his favor, as to which the testimony is conflicting. If regarded as material, the suggestions as to the insufficiency of the hypothetical questions which are made in the petition for writ of error and brief of counsel should have been made in the trial court, and it is too late to make such objections for the first time in this court.

3. Another assignment of error is, the overruling of the motion to set aside the verdict as contrary to the law and the evidence.

In considering this motion we are controlled by the demurrer to the evidence rule, section 3484 of the Code, and are prohibited from setting aside any verdict merely because of a serious conflict in the evidence. The motion cannot prevail unless the evidence upon which the verdict of the jury is based is clearly insufficient to support it. In this case the contrary is true. The testator had suffered from cystitis since 1908, which necessitated frequent catheterizations of his bladder, and finally died of Bright's disease in 1915 at the age of eighty-five. Without refer-

ring to all of the evidence of the many witnesses who testified to circumstances indicating the testator's mental incapacity, it is sufficient to say that the evidence of the opponents of the will tended to prove that he was abnormal in his personal appearance, in his walk, in his conduct, and in his conversation; that his mother was feeble-minded; that one of his sisters and one of his first cousins had been adjudged insane; that his brother was an imbecile; that he had frequent inexplicable outbreaks of anger; that during the war between the States his father endeavored to keep him out of the army upon the ground that he was so deficient as to make him incapable as a soldier, though it also appears that he did serve several years and that his record as a soldier was good; that at times he had the delusion that he could communicate with his dead mother, sister and brother; that he had assumed to consult his dead brother upon important business transactions, and gave as one of the reasons for making the will disinheriting his near relatives that his mother, brother and sister, who at the time the will was executed had been many years dead, told him what to do with his property, whether before their deaths or afterwards is not entirely clear from the record; that his memory was so short and unreliable that he sometimes appeared to forget his near relatives, and sometimes failed to recognize them; that he would hide his money and forget where he had hidden it; that he sometimes did not recognize his own horses; that he was untidy, wore his shoes unlaced or tied with a hickory withe, and frequently wore no socks; that his farming operations were conducted with little intelligence; that his property had depreciated because of his continuous neglect of it; that a warrant charging him with lunacy had been issued but had been dismissed because the commission did not think it necessary to put him in an asylum, one of the doctors who served on that commission characterizing him in his testimony as a high grade imbecile;

that on one occasion he did not recognize his own cattle; that on one occasion he delivered farming tools to his hands in the morning and when returned in the afternoon refused to receive them; that he claimed to hold conversations with his brother Jim, the imbecile who had been dead for many years; that he imagined he saw large balls of fire rise out of the garden and go up over the hills; that his conversation was disconnected; that once when riding horseback he carried grain or meal in a sack on his shoulder, instead of on the horse, giving as his reason therefor that it was easier for the horse to carry it this way; that he had carried eggs or produce to the store for sale or barter and left them there and forgot that he had done so; that on one occasion he rented his farm to an entire stranger, who turned out to be a tramp, receiving him into his house and putting him in charge of the farm, and when he learned the facts he repudiated the contract, was sued for damages, and having paid the judgment he from time to time thereafter went to the justice who tried the case and demanded of him the return of his money; that he once gave a permission to hunt on his land and within less than half an hour when the hunter had shot a squirrel, he ran up to him extremely angry and demanded to know who had given him permission to hunt on his land and ordered him to cease hunting and to leave his premises. There were other circumstances indicating imbecility and lack of testamentary capacity.

The jury having found that the paper propounded is not the last will and testament of the testator, and that verdict having been sanctioned by the judge of the trial court, the judgment will not be disturbed by this court.

4. Another assignment of error is to the judgment of the court requiring Sandridge, the claimant under the will, to pay the costs.

Where the executor named in the supposed testamentary paper, in the performance of his duty, offers it for probate,

his costs are taxed against the estate. This case, however, presents peculiar features, and we cannot say that the court erred in this particular. Our statute, section 3545 of the Code, declares: "Except where it is otherwise provided, the party for whom final judgment is given in any action, whether he be plaintiff or defendant, shall recover his costs against the opposite party." In this case it appears that Sandridge was the active litigant, seeking probate of the will—the real plaintiff. The contest was one between him, as a beneficiary, on the one hand, and the heirs at law of the decedent on the other, and because the heirs prevailed in the court below they were properly awarded their costs against their adversary. If in this case the costs be paid by the estate, the effect will be not only that the heirs at law will not recover from their adversary, but that although they prevailed in the litigation they will have to pay the costs thereof.

*In re Hendershott's Estate,* 134 Iowa, 320, 111 N. W. 969, 120 Am. St. Rep. 438, a proceeding for the probate of a will, contested by the heirs at law of the decedent on the ground of testamentary incapacity and undue influence, probate was refused, and it was held that the costs were properly taxed against the unsuccessful party who claimed under the will, under a statutory provision "that costs shall be recovered by the successful against the losing party." *Dodd* v. *Anderson,* 197 N. Y. 466, 90 N. E. 1137, 27 L. R. A. (N. S.) 336, 18 Ann. Cas. 738, and cases there cited.

We find no reversible error, and the judgment is affirmed.

*Affirmed.*