## MARTIN v. RICHMOND, F. & P. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924. On Rehearing, September 29, 1924.)

No. 2149.

1. **Railroads ☞5½, New, vol. 6A Key-No. Series—Company not liable on contracts for services performed during federal control.**

A railroad company is not liable for services rendered under contract during the period of federal control.

2. **Railroads ☞5½, New, vol. 6A Key-No. Series—Director General not liable for railroad's contracts for services unless adopted.**

The Director General of Railroads, on taking possession of a railroad under authority of Transportation Act Feb. 28, 1920, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼cc), was not bound to carry out the contract of the company for services in buying coal for it on commission, and no action for its breach could lie against him unless he adopted it.

3. **Railroads ☞5½, New, vol. 6A Key-No. Series—Director General entitled to reasonable time to reject or adopt railroad's contracts.**

The Director General, on the government's taking over the railroads, had a reasonable time to determine whether he would adopt or reject contracts for services, and in determining what is a reasonable time the existing emergency, and immensity and number of questions to be decided, and the fact that he had the benefit of the services and advice of the company's officials should be taken into account.

On Application for Rehearing.

4. **Appeal and error ☞237(6)—Whether at close of trial there is substantial evidence to sustain finding held question of law for court.**

Whether, at close of trial, there is substantial evidence to sustain finding in favor of one of parties is question of law, and where trial is before jury, question is reviewable on exceptions to ruling on request for peremptory instructions, and where trial is before court it is reviewable on motion, which presents issue to court for determination before end of trial.

5. **Railroads ☞5½—Director General, receiving coal after repudiating railroad's contract to pay for services in purchasing coal, held liable in quantum meruit.**

Where Director General, on government's taking over railroad, repudiated railroad's contract to pay plaintiff 5 per cent. for services in purchasing coal for railroad, but continued to receive coal from plaintiff, who reserved his right under contract, held, that Director General was liable to plaintiff in quantum meruit for value of services.

Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

Actions by C. Delaney Martin against the Richmond, Fredericksburg & Potomac Railroad Company, and against James C. Davis, Director General of Railroads, as Agent, under Transportation Act Feb. 28, 1920, § 206. Judgments for defendants, and plaintiff brings error. Judgment against defendant first named affirmed, and against defendant last named reversed.

Frank E. Wood, of Cincinnati, Ohio, and Robert E. Scott, of Richmond, Va. (D. E. French and French, Easley & Easley, all of

Bluefield, W. Va., and Scott & Buchanan, of Richmond, Va., on the brief), for plaintiff in error.

E. Randolph Williams and Wirt P. Marks, Jr., both of Richmond, Va., for defendants in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. In these consolidated actions against James C. Davis, Director General of Railroads, and the Richmond, Fredericksburg & Potomac Railroad Company, the plaintiff, C. Delaney Martin, claims $39,041.14 damages for breach of contract and also on quantum meruit for services performed. The question is whether the District Judge was right in directing a verdict for the defendants.

The facts are not in dispute. On July 1, 1917, the plaintiff, Martin, contracted with the Richmond, Fredericksburg & Potomac Railroad Company to supply for three years all its fuel coal, buying it at his own expense and on his own credit, and delivering it to the railroad at cost and a commission of 5 per cent. He furnished coal under the contract to the entire satisfaction and advantage of the railroad company until December 28, 1917, when under the act of Congress (Act Feb. 28, 1920, § 206 [Comp. St. Ann. Supp. 1923, § 10071¼cc]) the railroad was taken over by the President through the Director General. Thereafter until June 4, 1918, Martin continued to deliver all fuel coal for the railroad company under the orders of the Director General. Deliveries and payments were made under the terms of the contract. On June 5, 1918, the Director General, through the president of the railroad company, notified Martin that the coal contract would not be recognized by him and that, unless Martin would deliver the coal at the regular price without the commission, some other arrangements would be made to supply it. On the same day Martin answered, protesting against the injustice done him in the annulment of the contract, but saying: "I will continue to purchase coal for you as suggested in your telegram, without prejudice to my rights under the contract."

The Director General by letter and in person several times reiterated his repudiation of the contract. After June 4, 1918, he continued to receive the coal from Martin, but paid therefor only the cost price and expenses, without the 5 per cent. commissions or other compensation until January 1, 1919. On that day Martin agreed with the Direc-

tor General to deliver to the railroad its fuel coal supply until the end of the federal control, receiving therefore the cost price of the coal and expenses of purchasing, and $200 a month compensation. In making this agreement, however, Martin again expressly reserved his rights under the original contract. The agreement with the Director General provided that if Martin should establish his right to the 5 per cent. commission according to the contract, the amount found to be due him thereunder should be credited with the expenses and the $200 per month paid him under the new arrangement. When the government released control on March 1, 1920, the railroad company immediately resumed with Martin the relations established by the contract of July 1, 1917, and paid him commissions accordingly for four months, the remainder of the contract period.

The claim of the plaintiff is for 5 per cent. commissions for services rendered in purchasing coal from June 5, 1918, when the Director General gave notice of his refusal to adopt the contract of July 1, 1917, to March 1, 1920, when the railroad company was returned to its owner, less the sums paid him for expenses and compensation.

[1,2] Evidently, the railroad company is not liable for services rendered by Martin after the government frustrated the contract by taking over the property. Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087. It is equally clear that the Director General, taking possession under the authority of the federal statute, was not bound to carry out the contract of the railroad company with Martin, and that no action for its breach would lie against him, unless by his action he adopted it. Omnia Commercial Co., Inc., v. United States, 261 S. W. 502, 43 Sup. Ct. 437, 67 L. Ed. 773. He had, however, the option of adopting the contract with Martin under the provisions of subdivision (h) of section 4 of the contract between himself and the railroad company.

Martin's right to recover must stand or fall on the issue whether the Director General adopted the contract of July 1, 1917, between Martin and the railroad company. It will be observed that throughout all of the correspondence and negotiations Martin stood on his rights under the contract of March 1, 1917, protesting always against the injustice of not carrying it out, when he had abandoned his former business to enter into it. His consent of June 5, 1918, to go on purchasing coal without receiving com-

missions, and his agreement of January 1, 1919, to perform the service for a compensation of $200 a month and expenses, were expressly without prejudice to his rights under that contract. But there was no reservation of any other right. If he cannot recover, therefore, under the contract, he cannot recover at all.

[3] We do not think that it can be said there was no evidence of adoption of the contract by the Director General. For five months from December 28, 1917, to June 4, 1918, he and his agents in charge of the railroad received coal and made payments in accordance with the contract. It is true that the Director General had a reasonable time to obtain the information necessary for him to make an intelligent election whether he would adopt or reject the contract. Missouri Pac. R. Co. et al. v. Ault, 256 U. S. 554, 562, 41 Sup. Ct. 593, 65 L. Ed. 1087; Quincy Missouri & Pacific R. Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787, 36 L. Ed. 632; United States Trust Co. v. Wabash Western Ry. Co., 150 U. S. 287, 299, 14 Sup. Ct. 86, 37 L. Ed. 1085.

In deciding what was a reasonable time, the existing emergency and the immensity and number of questions to be decided by the Director General are to be taken into account; but it is also to be taken into account that the Director General had the benefit of the services and opinion and advice of the President, Superintendent and General Counsel, who were performing the functions of their respective offices for him and who were thoroughly familiar with Martin's contract and services. The question decisive of the case, for the determination of the jury, was, therefore, whether under all the circumstances the Director General, by acting under the contract and receiving its benefits for five months, should be considered to have adopted it. If the Director General gave notice within a reasonable time of his election to reject the contract, the plaintiff cannot recover. If, on the other hand, the Director General received the benefits and made payments under the contract for a longer time than was reasonably necessary for an intelligent election, then he should be held to have adopted it. This issue, we think, should have been submitted to the jury.

If both parties had asked for a directed verdict and nothing more, then the finding of the District Judge on the issues would be binding on both. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison, Topeka & Sante Fé R. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed 931, 15 Ann. Cas. 70; Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559. Plaintiff asked for a directed verdict, and in refusing it the District Judge, without request, directed a verdict for the defendant. The authorities do not go to the extent of holding that a request by one party for a directed verdict is a submission of all issues to the court.

The judgment is affirmed in the action against the railroad company, and reversed in the action against the Director General.

On Rehearing.

WADDILL, Circuit Judge. This case, in which there was a decision rendered on the 5th day of February, 1924, is now before the court upon application for rehearing filed by both parties. The facts and history of the case are fully set forth in the opinion already filed, and need but little elaboration.

Briefly, on the 7th of July, 1917, plaintiff in error contracted with the Richmond, Fredericksburg & Potomac Railroad Company to supply for the period of three years all of its fuel coal, he to buy at his own expense and on his own credit, and to deliver such coal to the railroad at cost and a commission of 5 per cent. The coal was furnished under the contract to the railroad until December 28, 1917, and the plaintiff in error paid therefor. On that day the railroad, under an act of Congress, was taken over by the President of the United States through the Director General of Railroads. Thereafter, until the 4th of June, 1918, coal was delivered and paid for under orders of the Director General upon the contract terms. On the 5th of June, 1918, the Director General notified plaintiff in error that the contract would not be further recognized by him, and that, unless the coal could be delivered at the regular price without commissions, some other arrangement would have to be made to supply the same. On the same day, plaintiff in error protested against the injustice done him in the attempted annulment of the contract, saying: "I will purchase coal for you as suggested in your telegram, without prejudice to my rights under the contract." The Director General, though repudiating the contract, nevertheless continued after June 4, 1918, to receive coal thereunder, paying only the cost price and expenses, without the 5 per cent. commission or other compensation until January 1, 1919. On that day, plaintiff in error agreed with the Director General to deliver coal until the end of the federal control, receiving therefor

the cost price of the coal, and expenses of purchasing, and $200 per month during that period. Plaintiff in error, in making the latter agreement, expressly reserved his rights under the original contract, and the new agreement provided that if he should establish his right to the commission, the amount found to be due him should be credited with the expenses and the $200 per month paid him.

The rehearing asked for challenges the correctness of this court's decision, reversing the action of the lower court and granting a new trial as against the Director General, and it is as to the propriety of this ruling that we have to pass. This court at that time said that the decisive question for determination was "whether under all the circumstances the Director General by acting under the contract and receiving its benefits for five months, should be considered to have adopted it. If the Director General gave notice within a reasonable time of his election to reject the contract, the plaintiff cannot recover. If, on the other hand, the Director General received the benefits and made payments under the contract for a longer time than was reasonably necessary for an intelligent election, then he should be held to have adopted it," and this issue should have been submitted and passed upon.

The reference in the opinion to a jury was an inadvertence, as there was no question but that the case was regularly tried by the court without a jury, and the terms and conditions under which it was tried. The facts were comparatively simple, and in the main undisputed; and the case was submitted to the judge upon an agreed statement of facts, together with the testimony of two witnesses, taken pursuant to agreement, relating to matters not the subject of serious controversy.

[4] The rule controlling this court upon a writ of error to the judgment of the District Court in cases submitted without the intervention of a jury, and especially upon an agreement as to the facts, as here, is well settled under the decision of this court in the case of Dexter & Carpenter v. Davis, 281 F. 385, 25 A. L. R. 1173, to which, and the cases therein cited, special reference is made. To the same effect will be found Dunsmuir v. Scott (C. C. A. 9th Cir.) 217 F. 200, 133 C. C. A. 194. Under these authorities, the question of whether or not at the close of a trial there is substantial evidence to sustain a finding in favor of one of the parties to the action, is a question

of law which arises in the progress of a trial; and where the trial is before a jury, that question is reviewable on exceptions to the ruling, upon request for peremptory instructions for a verdict. Where the trial is before the court, it is reviewable upon a motion which presents that issue of law to the court for determination at or before the end of the trial.

In this case, motions were duly submitted by the plaintiff in error at the conclusion of all the testimony, and during the progress of the trial, to wit, that the court would find and enter judgment in favor of the plaintiff against the defendants for the full sum sued for of $39,041.14, with interest until paid, and to render judgment accordingly, and that in any event the court would find and enter judgment in favor of the plaintiff in error for the sum of $13,853.40 as the lowest amount which the plaintiff was entitled to recover. The court overruled both motions, and plaintiff duly excepted.

[5] This court, in the previous opinion, as shown from the above excerpt therefrom, based the plaintiff's right to recover for any amount solely upon whether the Director General adopted the contract with the plaintiff in error, or within a reasonable time gave notice of his intention to reject the same.

We think, upon further consideration, that the court should go further, and that as to the coal furnished by plaintiff in error between the dates of June 4, 1918, and January 1, 1919, and for which recovery is asked of $13,853.40, based upon a quantum meruit for services rendered, that the right of recovery should not be dependent upon the reasonableness or unreasonableness of the time within which the Director General elected to repudiate the contract, or gave notice of his intention so to do. The amount due upon the basis of quantum meruit for that particular time, seems to be undisputed from the testimony, and therefore the court erred in refusing the second of plaintiff's motions.

In reaching our conclusion as to the right to recover on a quantum meruit for coal furnished during the period from June 4, 1918, to January 1, 1919, we are convinced that, under the circumstances under which the Director General received the coal from plaintiff in error, an implied contract arose on his part to pay what the service was justly worth, and we are not unmindful that the Director General did say he would repudiate the contract and not be bound thereby; but

when he continued to receive coal, knowing that the plaintiff in error was furnishing the same, with the declaration on his part that he did so reserving his right to demand compensation under the contract, he thereby incurred the liability insisted upon by plaintiff in error. To avoid this natural consequence, it was a simple matter to decline to receive the coal; and by accepting and using it, he obligated himself to make just compensation to the plaintiff in error for his services in connection therewith. Dermott v. Jones, 2 Wall. 1, 8, 9, 17 L. Ed. 762; Clark v. United States, 95 U. S. 539, 24 L. Ed. 518; The Sappho (C. C. A. 4th Cir.) 94 F. 545, 550, 36 C. C. A. 395; Kaufman v. Raeder (C. C. A. 8th Cir.) 108 F. 171, 177, 178, 47 C. C. A. 278, 54 L. R. A. 247; Carpenter v. Smithey, 118 Va. 533, 88 S. E. 321; City of Norfolk v. Norfolk County, 120 Va. 356, 361, 91 S. E. 820; Williston on Contracts, vol. 2, § 843, and cases cited; 1 Chitty on Pleadings, 333; 2 R. C. L. § 5, pp. 745, 746.

The irresistible inference, from the Director General's conduct in acepting and using the coal, is that it was to his interest to do so, and the testimony not only strongly tends to sustain this view, but that the Director General was otherwise without coal. Certainly it would be inequitable and unfair to allow plaintiff in error to render his service during the period in question for nothing. This would be the effect of allowing the Director General to accept and use the coal without paying what plaintiff's services were reasonably worth.

Our conclusion of this application for rehearing is that the judgment of the lower court should be reversed as to the Director General of Railroads, and a new trial awarded, for the reasons stated in this and the previous opinion filed herein.

Reversed.

---

WOODS, Circuit Judge (dissenting). I dissent, for the reason that in my conception the majority opinion attributes to the Director General an implied contract which he expressly refused to make. The importance of the case seems to justify a full statement of the facts and the law involved.

On July 1, 1917, the plaintiff, Martin, contracted with the Richmond, Fredericksburg & Potomac Railroad Company to supply for three years all its fuel coal, buying it at his own expense and on his own credit, and delivering it to the railroad at cost and a commission of 5 per cent. He furnished coal under the contract to the entire satisfaction and advantage of the railroad company until December 28, 1917, when under the act of Congress the railroad was taken over by the President through the Director General. Thereafter, until June 4, 1918, Martin continued to deliver all fuel coal for the railroad company under orders of the Director General. Deliveries and payments were made under the terms of the contract. On June 4, 1918, John Barton Payne, counsel for the Director General, wrote to plaintiff concerning the contract:

"I am directed by the Director General to advise you that the United States, being now in possession, operation and control of the Richmond, Fredericksburg & Potomac Railroad Company, declines to recognize the validity of said contract as binding on the United States, and will therefore decline to receive any coal pursuant to said contract from this date, unless you desire to deliver the coal at the regular price without payment of the 5 per cent. to you provided for therein. You may regard this as definite notification that the contract, so far as the United States is concerned, is not binding."

On June 5, 1918, White, president of the Richmond, Fredericksburg & Potomac Railroad Company, telegraphed plaintiff:

"Have just received orders from Judge John Barton Payne, general counsel for the Director General of Railroads, that the contract made between you and these companies for fuel purchased will not be recognized by the United States, the government having taken over these railroads together with their outstanding contracts, that unless you will deliver coal at the regular price without payment of five per cent. commission we shall make other arrangements to secure coal. Please wire quick if you are willing to agree to this proposition transmitted by Judge Payne."

By telegram dated June 5th plaintiff answered:

"Wire received. Am surprised at request of Judge Payne as my contract was made in good faith before any fuel administration orders and before government took over railroads. Have gone to great expense to enable me to perform this contract and should certainly have an opportunity to present my side of the matter before such summary action is taken. In the meantime however will continue to purchase coal for you as suggested in your telegram without prejudice to my rights under contract."

The Director General several times reiterated his repudiation of the contract of Martin with the railroad company. After June

4, 1918, in accordance with his agreement with Martin, the Director General continued to receive coal from Martin and paid therefor only the cost price and expenses, without the 5 per cent. commission or other compensation, until January 1, 1919. On that day Martin agreed with the Director General to deliver to the railroad its fuel coal supply until the end of the federal control, receiving therefor the cost price of the coal and expenses of purchasing and $200 a month compensation. In making this agreement, however, Martin again expressly reserved his rights under the original contract. The agreement with the Director General provided that, if Martin should establish his right to the 5 per cent. commission according to the contract, the amount found to be due him thereunder should be credited with the expenses and the $200 per month paid him under the new arrangement. When the government released control on March 1, 1920, the railroad company immediately resumed with Martin the relations established by the contract of July 1, 1917, and paid him commissions accordingly for four months, the remainder of the contract period.

The claim of the plaintiff is for 5 per cent. commission for services rendered in purchasing coal from June 5, 1918, when the Director General gave notice of his refusal to adopt the contract of July 1, 1917, to March 1, 1920, when the railroad was returned to its owner, less the sums paid him for expenses and as compensation. Evidently, the railroad company is not liable for services rendered by Martin after the government frustrated the contract by taking over the property. Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. It is equally clear that the Director General, taking possession under the federal statute, was not bound to carry out the contract of the railroad company with Martin, and that no action for its breach would lie against him, unless by his action he adopted it. Omnia Commercial Co., Inc., v. United States, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed. 773. He had, however, the option of adopting the contract with Martin under the provisions of subdivision (h) of section 4 of the contract between himself and the railroad company.

The letters and telegrams show beyond all doubt (1) explicit refusal of the Director General to continue the contract with Martin; (2) refusal of the Director General to accept the coal in the future unless Martin would agree to deliver it at the regular price without commission; (3) notice to Martin from the Director General that, in case of Martin's refusal to deliver the coal at the regular price, the Director General would get the coal from another source; (4) Martin's agreement to continue to deliver the coal on the terms named by the Director General—that is, without compensation above the regular price; (5) the reservation by Martin, acceded to by the Director General, that if it should turn out that the contract with the railroad company to pay 5 per cent. commission was binding on the Director General, then, and not otherwise, Martin should receive 5 per cent. commission above the regular price.

It turned out that the Director General was not bound by the contract with the railroad company. Therefore the condition upon which the parties agreed that Martin should receive compensation above the regular price failed, and he has no right of action against the Director General for compensation. By the majority opinion Martin is relieved of the condition and risk which he took by his express agreement with the Director General. His explicit contract to assume the risk and accept the condition, as it seems to me, is set aside and annulled, and an implied contract to pay the value of his service is attributed to the Director General. I cannot agree that the judicial power extends to substitution of an implied contract to pay for services the opposite of the contract actually made, fully understood and acted upon by both parties.

The authorities cited in the majority opinion do not seem to me to support its conclusion. There was one issue of fact in the case. Did the Director General so unreasonably delay repudiation of the contract that he should be held to have adopted it? This issue was decided by the District Judge against the plaintiff on facts sufficient to support an answer either way. Hence the decision of the District Judge on this point was final.

I regret the additional labor imposed on the other members of the court and the counsel in the cause, due to my failure in writing the former opinion to observe that the case was tried by the District Judge without a jury.

I think the judgment should be affirmed.